**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-4146**


UNITED STATES OF AMERICA,

                    Plaintiff – Appellee,

          v.

DAVID L. HOWARD,

                    Defendant – Appellant.


**No. 07-4147**


UNITED STATES OF AMERICA,

                    Plaintiff – Appellee,

          v.

NICHOLAS RAGIN,

                    Defendant – Appellant.


**No. 07-4168**


UNITED STATES OF AMERICA,

                    Plaintiff – Appellee,

v.

TRACY HOWARD,

              Defendant – Appellant.

------

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., Chief District Judge.  (3:04-cr-00271)

------

Argued:  December 5, 2008         Decided:  January 29, 2009

------

Before TRAXLER and AGEE, Circuit Judges, and Rebecca Beach SMITH, United States District Judge for the Eastern District of Virginia, sitting by designation.

------

Affirmed in part, vacated in part, and remanded in part by unpublished per curiam opinion.

------

**ARGUED:** Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina; Richard A. Culler, CULLER & CULLER, Charlotte, North Carolina; Sue Genrich Berry, BOWEN AND BERRY, P.L.L.C., Wilmington, North Carolina, for Appellants.  Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF:** Claire J. Rauscher, Executive Director, Matthew R. Segal, Peter S. Adolf, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant David L. Howard. Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

------

Unpublished opinions are not binding precedent in this circuit

2

PER CURIAM:

David L. Howard ("David"), Tracy Howard ("Tracy"), and Nicholas Ragin ("Ragin") (collectively "the Defendants") appeal their convictions and sentences on various charges primarily related to prostitution and illegal drug sales. (JA 65). Relevant to this appeal for all the Defendants are convictions for conspiracy to promote prostitution in violation of 18 U.S.C. §§ 2422, 2423, 1952 (2008), (JA 66-68), and conspiracy to possess with intent to distribute more than fifty grams of cocaine base in violation of 21 U.S.C. § 846. (JA 70). David and Tracy were also convicted for conspiracy to launder prostitution proceeds in violation of 18 U.S.C. § 1956. (JA 69).

David contends that he was deprived of his Fifth and Sixth Amendment rights to present a defense and that he was sentenced based on an incorrect advisory guideline range. Tracy argues that the district court erroneously denied his motion to suppress certain evidence. David and Tracy jointly assert that the district court gave incorrect jury instructions for the money laundering count. The Defendants collectively appeal their sentences, arguing that the district court gave incorrect jury instructions and that the sentences violate their Fifth and Sixth Amendment rights. For the following reasons, we affirm the judgment of the district court in part, vacate in part, and remand as to David for resentencing.

3

## I. Tracy's Motion to Suppress

In reviewing a denial of a motion to suppress, this Court reviews the district court's factual findings for clear error and its legal conclusions de novo. United States v. Johnson, 114 F.3d 435, 439 (4th Cir. 1997).

### A. Relevant Facts

In September 2004, Vice Detective M.J. Grimsley ("Grimsley") received information from David, who was acting as a confidential informant, that Tracy was selling drugs and prostituting underage girls. On September 16, 2004, David informed Grimsley that Tracy had rented a hotel room and was staying in the room with his girlfriend, Keshia Burris ("Burris") who was listed as a guest at the hotel. David also reported that Tracy and Burris had a fourteen year old girl in the room. Grimsley was unable to confirm whether the alleged minor was staying in the room but determined there was an outstanding warrant for Tracy's arrest.

Instead of arresting Tracy in the hotel room, detectives waited until he left the room and drove a few blocks away from the hotel where they conducted a traffic stop. (JA 129). During the stop, Grimsley questioned Tracy about his activities at the hotel, including whether he kept a minor there or had any instrumentalities of crime in his room. Grimsley asked for

4

Tracy's consent to search the room and Tracy responded that he "would consent to [Grimsley's] searching for a body" but "he did not want [Grimsley] poking around" because "he had a little money" in the room. (JA 132). Tracy was then arrested on the outstanding warrant and taken to the local law enforcement center for questioning.

Officers then approached Burris at the hotel and asked her permission to enter and search the hotel room. She consented to the search and opened the door with her key. Upon entering the hotel room, officers did not see a minor or any other person, but drug paraphernalia, including packaging for cocaine, a scale, a razor blade, and a bag of crack cocaine were in plain view. Upon searching the room further, officers found more crack cocaine, money, and a pistol hidden at various places.

Tracy filed a motion to suppress the evidence found in the hotel room as well as certain statements he made to police in an interview after his arrest. He contended that the hotel room search was unlawful because he did not give his consent. The district court denied the motion.

## B. Analysis

Tracy avers that Burris's consent to a search of the hotel room was not sufficient to overcome his express refusal to give consent for a search. In support of his position, Tracy cites

5

the Supreme Court's holding in Georgia v. Randolph, 547 U.S. 103 (2006), which stated that a "physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." Id. at 122-23. In that case, the defendant unequivocally refused to consent to a warrantless police search. Id. at 107. His wife subsequently gave police permission to search their marital residence. Id. The Supreme Court held that the search was unreasonable and invalid as to the husband. Id. at 120.

Tracy argues that Randolph applies here because he only gave limited consent to a search, that is, to verify the fourteen year old minor was not in the hotel room.[1] Consequently, Tracy contends the police officers breached the rule in Randolph, because they conducted a full search which was beyond the limits of his consent. The Government responds that Randolph does not apply because Tracy was not physically present at the hotel when Burris consented to a full search of the room.

---

[1] During the hearing on Tracy's motion, the district court made a factual finding that Grimsley's testimony that Tracy gave consent to the police officers to search his hotel room for "a body" was credible. The court did not credit Tracy's testimony that he did not consent to even a limited search. This finding was not clearly erroneous and will not be disturbed by this Court. United States v. Depew, 932 F.2d 324, 327 (4th Cir. 1991).

6

It is not necessary for us to reach the Randolph question because, under the facts of this case, the inevitable discovery rule applies. "[W]here it appears that evidence 'inevitably would have been discovered by lawful means,' the deterrence rationale of the exclusionary rule has 'so little basis' that the rule should not be applied." United States v. Whitehorn, 813 F.2d 646, 650 (4th Cir. 1987) (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)).

The officers who entered Tracy's hotel room, on the basis of the limited consent to search the room for a body, discovered the drug paraphernalia in plain view. Upon observing this paraphernalia in plain view, officers inevitably would have arrested Burris and Tracy. Incident to that arrest, officers would have searched the surrounding area. Police may conduct a search of the area "immediately adjoining the place of arrest from which an attack could be immediately launched." Maryland v. Buie, 494 U.S. 325, 334 (1990). The district court found that any items seized that were not in plain view "were readily accessible by any inhabitant of that room." (JA 261). Thus, while conducting a search incident to arrest, officers would have inevitably discovered the other incriminating evidence which was not in plain view.

Accordingly, the district court did not err in denying Tracy's motion to suppress.

7

## II. David's Right to Present a Defense

This Court reviews the trial court's determination of whether a defendant's constitutional right to a fair trial has been violated de novo. See United States v. Ali, 528 F.3d 210, 232 (4th Cir. 2008) (reviewing constitutional claims de novo). Evidentiary rulings generally are reviewed for abuse of discretion. United States v. Queen, 132 F.3d 991, 995 (4th Cir. 1997).

### A. Relevant Facts

The government informed David's counsel before trial that it possessed evidence that he had cooperated with them against his co-conspirators prior to his arrest. In a taped interview, David gave the officers information about Tracy's use of underage girls, and told officers he was not involved in the prostitution of underage girls. He gave the officers the names of the girls Tracy was using and said he would do his best to help the officers find the runaway girls.

The district court initially refused to allow into evidence testimony about the information David had provided to police citing Bruton v. United States, 391 U.S. 123 (1968). Counsel for David sought to elicit testimony from Officer Decker ("Decker") about specific statements David made while acting as an informant. The district court excluded this testimony based

on Bruton, although Decker was permitted to testify generically that David had provided information about the case and Tracy's hotel location. The court explained that, while David could establish that he acted as an informant, more specific testimony would not only violate the hearsay rule, but also create a danger of unfair prejudice and confusion under Federal Rule of Evidence 403.

David testified in his own defense in an attempt to cure the Bruton issue. However, the government objected on hearsay grounds when David sought to testify about specific statements he had made to the police. The court sustained the objection, but ruled in the alternative under Rule 403 of the Federal Rules of Evidence and found that the evidentiary value of the statements would be de minimis, because David's motivation for acting as an informant was suspect. Ten days into trial, David filed a motion to admit "exculpatory impeachment evidence," to call government counsel as a witness, and/or for severance of his trial from that of the other defendants.

## B. Analysis

In Bruton, the Supreme Court held that the confrontation clause is violated by the introduction of a non-testifying defendant's statement that contains incriminating evidence against the co-defendant. 391 U.S. 124. As there were co-

9

defendants in this case, any testimony by Decker as to the incriminating statements David made about Tracy's activities while he was acting as an informant was barred under Bruton.

Although David eventually did testify in an attempt to remove the Bruton barrier, the district court held that the testimony nevertheless remained inadmissible. The district court determined that, under Federal Rule of Evidence 403, the statements were unduly prejudicial and potentially confusing to the jury because they were "only offered to counter one object of a multi-object conspiracy count which itself is but one of 17 counts against David Howard." (JA 2703). Furthermore, the proposed testimony's probative value would be de minimis, as it was just as likely that David cooperated with police for reasons other than his lack of involvement with the conspiracy, including bad blood between the brothers and in an attempt to minimize his culpability. We hold the district court did not abuse its discretion in making these determinations.

Alternatively, David argues that his requests for severance should have been granted. However, barring special circumstances, "defendants indicted together should be tried together for the sake of judicial economy." United States v. Rusher, 966 F.2d 868, 877 (4th Cir. 1992). David made his request for severance after nearly two weeks of trial. The district court determined that it would be unduly burdensome to

10

force vulnerable witnesses to again go through the trauma of testifying. Further, the district court found severance of the defendants at such a late date would impair the efficiency and fairness of the judicial system. The court did not abuse its discretion in refusing to sever David's trial from that of the other defendants.

## III. Jury Instructions and Collins

Because the Defendants did not object to the district court's jury instruction, this Court reviews for plain error. United States v. Hastings, 134 F.3d 235, 239 (4th Cir. 1998). If plain error is shown the Court may correct the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (quoting United States v. Olano, 507 U.S. 725, 732 (1993)).

## A. Relevant Facts

The Defendants were each charged with and convicted of conspiring to possess with intent to distribute more than fifty grams of cocaine base. While instructing the jury on this count, the court stated in relevant part: "you must then determine the quantity of cocaine base involved. You will be provided with a special verdict form that specifically addresses the drug and the quantity to be considered." (JA 3702). The

11

relevant portion of the special verdict form for each individual defendant provided this inquiry for the jury to answer: "if guilty, was more than 50 grams of a mixture and substance containing a detectable amount of cocaine base reasonably foreseeable to [individual defendant]?" (JA 3756, 3761, 3764).

## B. Analysis

The Defendants argue that the jury instructions given on the drug conspiracy count violate this Court's holding in United States v. Collins, 415 F.3d 304 (4th Cir. 2005). They contend the district court erred by not charging the jury with determining the exact amount of drugs attributable to each individual defendant, rather than to the conspiracy as a whole.

The issue in Collins was whether "an individual defendant . . . [should] be sentenced . . . by considering the amount of narcotics distributed by the entire conspiracy? Or should that defendant's sentence be more individualized, subjecting him to punishment only for distribution of the amount of narcotics attributable to him?" Id. at 312. This Court held that "the most reasonable interpretation of the relevant statutory provisions requires a sentencing court to assess the quantity of narcotics attributable to each coconspirator." Id. (quoting United States v. Irvin, 2 F.3d 72, 77 (4th Cir. 1993)). This Court held that the district court must instruct the jury to

12

"determine what amount of cocaine base was attributable to Collins using Pinkerton principles."[2] Id. at 314. Thus, we must determine whether the court properly instructed the jury to make an individualized finding of reasonably foreseeable drug quantities as to each of the Defendants. See United States v. Brooks, 524 F.3d 549, 553 n.5 (4th Cir. 2008).

In this case, the court's bench instructions did not specifically instruct the jury that it must find the drug amounts attributable to each individual defendant. However, the special verdict form, referred to and incorporated by the jury instructions, did specifically require the jury to find whether more than fifty grams of the cocaine base was reasonably foreseeable to each defendant. We believe the Collins requirement is satisfied in this case by the special verdict form.

The Ninth Circuit has held that "[v]erdict forms are, in essence, instructions to the jury." United States v. Reed, 147 F.3d 1178, 1180 (9th Cir. 1998). The Ninth Circuit was "unwilling to conclude that the district court committed plain error in omitting this information from the formal jury

_____

[2] "Pinkerton principles" refers to the concept that a member of a conspiracy is guilty of his own overt acts, as well as acts by coconspirators that are reasonably foreseeable and a natural consequence of the unlawful agreement. Pinkerton v. United States, 328 U.S. 640, 646-48 (1946).

13

instructions" when the information was included in the special verdict form. United States v. Alghazouli, 517 F.3d 1179, 1189 (9th Cir. 2008). The Second Circuit also concluded that "[t]he court's special verdict questions must be read in conjunction with the judge's charge to the jury." Vichare v. AMBAC, Inc., 106 F.3d 457, 466 (2d Cir. 1996). The First Circuit has stated that "[w]e examine the court's instructions to the jury and wording on the verdict form as a whole to determine whether the issues were fairly presented to the jury." Sheek v. Asia Badger, Inc., 235 F.3d 687, 699 (1st Cir. 2000). As a general principle, "we must assume that the jury understood and followed the court's instructions." United States v. Udeozor, 515 F.3d 260, 271 (4th Cir. 2008) (quoting United States v. Hedgepeth, 434 F.3d 609, 614 n.4 (3d Cir. 2006) (internal quotations omitted)). Based on these principles, taking the jury instructions and the special verdict form as a whole, it is reasonable to conclude the jury understood that it was to determine the amounts of cocaine base reasonably foreseeable to each individual defendant in the conspiracy.

The jury ultimately received the message that drug amounts must be determined for each individual defendant. Further, the evidence that the quantity was attributable to each individual "was overwhelming and essentially uncontroverted," so the error, if any existed, would not rise to the level of plain error.

14

United States v. Foster, 507 F.3d 233, 252 (4th Cir. 2007) (stating "that disturbing [the defendant's] sentence on the drug conspiracy count . . . would seriously affect the fairness, integrity, and public reputation of judicial proceedings"). Accordingly, we find no error, much less plain error, in the district court's jury instructions.


## IV. David's Sentence

This Court reviews sentences for reasonableness, applying an abuse of discretion standard of review. United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007). The district court's factual determinations as to a defendant's role in an offense are reviewed under the clearly erroneous standard. United States v. Hyppolite, 65 F.3d 1151, 1159 (4th Cir. 1995).


### A. Relevant Facts

David's Presentence Investigation Report ("PSR"), as amended, calculated the base offense level for violating the money laundering statute by using the drug conspiracy as the underlying offense from which the laundered funds were derived. This produced a base offense level of 36, based on 612 grams of cocaine base. The PSR then added one level for the use of underage individuals in the commission of the crime, pursuant to

15

§ 2D1.2(a)(2), and two more levels for possession of a firearm, pursuant to § 2D1.1(b)(1), resulting in a total base offense level of 39. The PSR then added two more levels because David was convicted of violating 18 U.S.C. § 1956. Lastly, the PSR added three levels for David's aggravating role as a "manager or supervisor" in the offense pursuant to § 3B1.1, resulting in a level of 44, which exceeds the maximum offense level of 43. David's final criminal history category was category V, which resulted in a guideline range of life imprisonment.

David objected on Sixth Amendment grounds to any drug amount attribution beyond the fifty grams found by the jury as part of its verdict. He also objected to using the drug offense as the underlying offense on the money laundering charge and to the "manager or supervisor" enhancement. The district court rejected both objections and found a quantity of "more than 500 grams but less than 1.5 kilograms" of drugs was attributable to David. Further, the court found that he was a manager or supervisor of the money laundering operation within the meaning of § 3B1.1. The district court determined the PSR calculation of the life imprisonment guideline range was correct and sentenced David to life in prison.

David contends that the district court's calculation of his offense level was erroneous for two reasons. First, David argues that the court erred by using the drug conspiracy,

16

instead of the prostitution conspiracy, as the underlying offense for calculating the money laundering offense level. David next argues that the court erred by enhancing that offense level by three levels under the "manager or supervisor" provision of § 3B1.1.

B. The Underlying Offense to the Money Laundering Charge

To determine the base offense level for a charge of money laundering, the Guidelines direct courts to use "[t]he offense level for the underlying offense from which the laundered funds were derived . . . ." § 2S1.1. Application Note 2(A) provides "[i]n cases in which . . . there is more than one underlying offense, the offense level for the underlying offense is to be determined under the procedures set forth in Application Note 3 of the Commentary to §1B1.5." § 2S1.1 cmt. 2(A). This commentary directs the court to use "the most serious such offense." § 1B1.5 cmt. 3. In the case at bar, the most serious offense is the drug charge, not the prostitution charge. David argues that using the drug charge as the underlying offense was error because the Government did not prove that any laundered funds were derived from selling drugs, and that the court consistently stated that the origin of the laundered funds was prostitution.

17

Although the court did refer to the prostitution ring as the origin of the laundered funds, this does not bar the court from using the drug conspiracy as the underlying offense for the laundering charge. Courts are to consider the Guidelines' language, and the relevant conduct provision, broadly. The relevant conduct provision, § 1B1.3, is to be construed liberally, including applicable conduct not charged in the indictment. See United States v. Asch, 207 F.3d 1238, 1244 (10th Cir. 2000); United States v. Behr, 93 F.3d 764, 765 (11th Cir. 1996); United States v. Silkowski, 32 F.3d 682, 688 (2d Cir. 1994); United States v. Davern, 970 F.2d 1490, 1494 (6th Cir. 1992). Nonetheless, the drug conspiracy charge was incorporated by reference at the first paragraph of the indictment. Thus, David was on notice that the drug conspiracy was applicable throughout to all criminal conduct charged in the indictment.

Moreover, there is sufficient evidence that the receipts from the prostitution services and the sale of drugs were commingled. The record reflects that the drug and prostitution rings were inextricably linked. Testimony established that money received from the sale of drugs helped pay rent, bail, and purchases of clothes, jewelry, and condoms for the prostitutes. Moreover, the prostitutes were also directly involved in the sale of drugs. Burris testified that she and another prostitute would help bag crack for Tracy if he was "in a hurry or he

18

didn't feel like doing it." (JA 2823). Burris testified that she did this at least twice a week. The prostitutes also delivered the drugs to the buyers. Burris testified that she would go to Little Mexico to "drop off [crack] for D or go drop something off to David" about three times a week. (JA 2836-37). Clearly some of the money David received from selling drugs was used to purchase additional drugs or in furtherance of the expenses of the prostitution ring. Because the prostitution and drug rings were so intertwined and the laundered funds were derived from both, it was appropriate to use the drug offense as the base offense in calculating the guideline range on the money laundering charge.

C. David's Role as a Manager or Supervisor

David's offense level was increased by three levels because the district court determined that he played an aggravating role as a "manager or supervisor" of the money laundering operation. Section 3B1.1(b), the guideline provision applied to David, provides that "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels." § 3B1.1(b). Chapter Three adjustments are "determined based on the offense covered by this guideline (i.e., the laundering of criminally derived funds) and not on

19

the underlying offense from which the laundered funds were derived." § 2S1.1 cmt. 2. David argues that the district court's finding that he was a manager or supervisor of the money laundering scheme was erroneous. We agree.

David contends that he was not sufficiently involved in the scheme to be characterized as a "manager or supervisor." While the Guidelines do not define the term "manager," this Court has utilized the dictionary definition: "a person whose work or profession is the management of a specified thing (as a business, an institution, or a particular phase or activity within a business or institution)." United States v. Chambers, 985 F.2d 1263, 1268 (4th Cir. 1993) (quoting Webster's Third New International Dictionary 1372 (1986)). The evidence in the record fails to support a finding that David met this description as to the money laundering scheme itself.

The district court found that David "created the business," (referring to his prostitution business), that his "[c]ell phone number was used as a number for the business," and that "he drove [the prostitutes] to the johns that they were servicing, collected money from them, [and] split the money with his mother." (JA 3992). However, these facts go to David's involvement in the prostitution ring, and not to David's involvement in the money laundering scheme. There is no evidence that David had any supervisory role in the money

20

laundering scheme, which was organized and carried out for the most part by Ila. Thus, the district court's finding that David was a manager or supervisor of the money laundering scheme constituted procedural error rendering David's sentence unreasonable under Gall v. United States, 128 S. Ct. 586, 597-98 (2007). See United States v. Diaz-Ibarra, 522 F.3d 343, 347 (4th Cir. 2008) ("An error in the calculation of the applicable Guidelines range . . . makes a sentence procedurally unreasonable.").

The district court's error in the calculation of the sentencing range in determining David's sentence requires that we vacate the district court's judgment fixing David's sentence, and we remand the case to the district court for resentencing without the Chapter Three adjustment.


## V. Defendants' Sentences

The Defendants argue that their sentences were imposed pursuant to a mandatory crack guideline that violated their Fifth and Sixth Amendment rights. They note that Kimbrough v. United States, 552 U.S. ___, 128 S. Ct. 558, 169 L.Ed.2d 481 (2007), was decided after the sentencing hearing and that the approach by the district court in sentencing the Defendants contravenes Kimbrough. The Supreme Court in Kimbrough held that a district court may conclude that the Guidelines' crack

21

cocaine/powder cocaine disparity yields a sentence greater than necessary. <u>Kimbrough</u>, 128 S. Ct. at 574. This holding abrogated the precedent in this Circuit under <u>United States v. Eura</u>, 440 F.3d 625 (4th Cir. 2006), which held that the district court could not diverge from the advisory sentencing range under the Guidelines by substituting its own crack cocaine/powder cocaine ratio.

However, <u>Kimbrough</u> did not hold that the district court <u>must</u> conclude that any sentences within the Guidelines involving crack cocaine yields a sentence "greater than necessary." Instead, <u>Kimbrough</u> permits a district court to sentence outside the advisory sentencing range if the court deemed it appropriate under the circumstances of that case. Here, the district court clearly was not sentencing based solely on the advisory sentencing range. The district court specifically stated that a sentence within the Guideline range in this case was sufficient, but no greater than necessary, to accomplish the objectives set forth in § 3553(a). The court remarked

> [s]o the sentence imposed, although consistent with the advisory guideline range, is the sentence the Court would have imposed if the guidelines never existed. If the Court had authority to sentence anywhere within the statutory maximum without respect to any limitation or guidelines or anything else, this is the sentence the Court would have imposed . . . And the Court concludes that that sentence is sufficient but not greater than necessary to meet the sentencing objectives of Section 3553(a).

22

(JA 4035) (as to David).  As to Ragin, the court stated that "the sentence of 360 months, though imposed with knowledge of the severity of the sentence, is sufficient but not greater than necessary to accomplish the goals of sentencing." (JA 4116).  A Kimbrough analysis does not affect the Defendants' sentences, because the sentencing approach taken by the district court was not contrary to the ruling in that case.  The district court appropriately determined sentences it felt were "sufficient but not greater than necessary" and did not err in doing so.


VI. Jury Instructions on the Money Laundering Count

Count Twelve of the indictment charged David and Tracy with conspiracy to violate the money laundering statute, 18 U.S.C. § 1956(h) (2008).  The court instructed the jury (in relevant part), that "you must find beyond a reasonable doubt . . . that the funds or property involved in the financial transaction did, in fact, represent the proceeds of specified unlawful activity, in this case the proceeds of the use of interstate facilities to promote prostitution." (JA 3693-94).  The jury was to use the "ordinary, everyday meaning" for the term "proceeds," as the the term was not explicitly defined by the district court in the jury instructions.  Because the Defendants did not object to the district court's instruction, this Court reviews for plain

23

error. United States v. Hastings, 134 F.3d 235, 239 (4th Cir. 1998).

David and Tracy posit that the common definition of "proceeds" could be either "profits" or "receipts." They argue that the Supreme Court, in a case decided subsequent to their opening brief, held that "proceeds" should be defined to mean "profits" and not "receipts." Consequently, they contend that the Government failed to prove that operation of the prostitution ring resulted in any profits, as opposed to merely receipts. They contend all of the money earned by the prostitutes was put back into the business in the form of new clothes and room and board and therefore they had no profits and could not be found guilty under Count Twelve as a matter of law.

A plurality of the Court in United States v. Santos, 128 S. Ct. 2020 (2008), held the term "proceeds" to mean "profits" and stated that "a criminal who enters into a transaction paying the expenses of his illegal activity cannot possibly violate the money-laundering statute, because by definition profits consist of what remains after expenses are paid." Id. at 2027. However, because Santos was a plurality opinion, the holding of the Court for precedential purposes is the narrowest holding that garnered five votes. Marks v. United States, 430 U.S. 188, 193 (1977). Here, Justice Stevens's concurrence provides the narrowest holding. Santos, 128 S. Ct. at 2031. Justice Stevens writes

24

that the "profits" definition of "proceeds" is limited to money laundering cases involving a gambling operation like the one in that case. He explains that, "[i]n other applications of the statute not involving such a perverse result [as in this case], I would presume that the legislative history summarized by Justice Alito [that "proceeds" means "receipts"] reflects the intent of the enacting Congress." Id. at 2034 n. 7. Justice Stevens thus carves out an exception for gambling operations in which "proceeds" means "profits," although the rule is that "proceeds" means "receipts."

Because Santos does not establish a binding precedent that the term "proceeds" means "profits," except regarding an illegal gambling charge, we are bound by this Court's precedent establishing that "proceeds" means "receipts." See, e.g., United States v. Singh, 518 F.3d 236, 247 (4th Cir. 2005) (recognizing that funds used by prostitutes to pay the cost of a hotel room for purpose of prostitution constituted "proceeds"); United States v. Caplinger, 339 F.3d 226, 233 (4th Cir. 2003) (holding that the element of use of unlawful proceeds can be proven by circumstantial evidence that the defendant applied unlawful proceeds to promote and perpetuate his scheme); United States v. Stewart, 256 F.3d 231, 250 (4th Cir. 2001) (affirming a money-laundering conviction where proceeds from the sale of drugs were used to further the drug operation). Thus, the

district court did not err in instructing the jury to use the common dictionary definition of "proceeds."

VII.

For the foregoing reasons, the judgment of the district court is affirmed in all respects except as to David's sentence. The judgment as to David's sentence is vacated and his case remanded for resentencing.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED IN PART