**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 3, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

JOEL PARRA,

　　　　Defendant - Appellant.

No. 10-8045
(D. Ct. No. 2:04-CR-00107-WFD-7)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **TACHA**, and **GORSUCH**, Circuit Judges.

　　　Defendant-appellant Joel A. Parra pleaded guilty to conspiring to traffic in methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and conspiring to launder money, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i), and (h). On appeal, he challenges the validity of his guilty plea to the money laundering charge. Taking jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. BACKGROUND

　　　In 2002, the United States Drug Enforcement Administration began investigating a drug trafficking organization headed by Rodolfo Jimenez. The Jimenez organization

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

distributed large amounts of methamphetamine and marijuana in Wyoming, Colorado, and Nebraska. The organization utilized Western Union to transfer some of the proceeds received from the transactions and to facilitate the transportation and delivery of drugs.

Mr. Parra's involvement in the drug conspiracy began in February 2004. In early February, Mr. Parra and Mr. Jimenez began to communicate regularly by telephone about Mr. Parra supplying the Jimenez organization with marijuana and methamphetamine. On March 5, Mr. Jimenez traveled from his home in Wyoming to meet with Mr. Parra and other members of the conspiracy at Mr. Parra's home in Carson City, Nevada. At the meeting, Mr. Parra agreed to provide Mr. Jimenez with a one-pound sample of methamphetamine. Because Mr. Jimenez did not want to transport the drugs back to Wyoming himself, Mr. Parra agreed to send a driver.

On March 6, Mr. Parra gave Allie Sawyer, the driver, $135 cash for travel expenses, and promised to pay him $1000 upon completion of the trip. On his way to Casper, Wyoming, Mr. Sawyer was stopped by Wyoming Highway Patrol. Mr. Sawyer consented to a search of his vehicle, which resulted in the discovery and seizure of the methamphetamine.

On May 19, 2004, Mr. Parra was indicted along with thirty-three other members of the drug conspiracy. Mr. Parra was named in two counts: Count 1, conspiring to possess, with the intent to distribute, 500 grams or more of marijuana and methamphetamine; and Count 3, conspiring to launder money. On January 11, 2005, Mr. Parra appeared in court to enter a guilty plea to both counts pursuant to a plea agreement with the government.

The proposed plea agreement was entered into under Fed. R. Crim. P. 11(c)(1)(C). Among other things, the agreement included a binding stipulation that Mr. Parra's base offense level under the sentencing guidelines would be level 34. In addition, the agreement required that Mr. Parra stipulate to a two-level enhancement to account for his involvement in money laundering.

At the outset of the change-of-plea hearing, the government summarized the significant aspects of the plea agreement for the district court. Following the government's summary, the court addressed Mr. Parra and engaged with him in a Rule 11 colloquy. During the Rule 11 colloquy, the court asked Mr. Parra to explain the conduct which supported the charges against him. With regard to the money laundering charge, the following exchange took place:

> THE COURT: Let's turn our attention to Count Three, Mr. Parra. It says you committed this offense within that period of time. Now, tell me what you did as it pertains to Count Three.
>
> THE DEFENDANT: Mr. Jimenez went to my place in Nevada, and we discussed the prices for whatever the methamphetamine I was supposed to send him; and—and also I asked Mr. Jimenez for money, a hundred-dollar bill—$100 for me.
>
> THE COURT: So you agreed to conduct or attempt to conduct a financial transaction involving property constituting the proceeds of specified unlawful activity, in this case the proceeds of illegal drug trafficking. Is that what you did?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: How, in particular, did you do that? Talk to Mr. Lee if you need to.
>
> (There was an off-the-record discussion by defense counsel and defendant.)
>
> THE DEFENDANT: Oh, yes. I didn't understand what you was asking me.

Yeah, I can see. Yeah. Once Mr. Jimenez and I—we discussed the—the price for this methamphetamine, he was supposed to send me—well, send the money to—to pay the sources where we get them from, and that's pretty much the way.

THE COURT: You knew these—this property, this money that was involved in this transaction—you know it was proceeds from the sale of unlawful activity or the involvement in some unlawful activity?

THE DEFENDANT: I do, sir.

THE COURT: In this case drug trafficking?

THE DEFENDANT: Yes. That was drug trafficking.

THE COURT: Were your transactions designed to—in whole or in part, to conceal or disguise the nature of location, source or ownership of those proceeds and, if so, how?

THE DEFENDANT: Yes. Mr. Jimenez—he was supposed to pay for it.

THE COURT: Say that again.

THE DEFENDANT: Mr. Jimenez.

THE COURT: He was supposed to do what?

THE DEFENDANT: Pay or send the money to—to us. That way we can pay to the people, whoever we was supposed to pay for it.

THE COURT: Did you act out with the intention to promote his activities?

THE DEFENDANT: I don't—I don't understand.

THE COURT: What were your intentions when you got yourself involved in this?

THE DEFENDANT: To be honest, get some drugs for me and get a little cash for . . .

THE COURT: The Court will rely on the prosecutor's statement if Mr. Lee doesn't object. Is the government satisfied with the defendant's factual admissions?

MR. RANKIN: I am, Your Honor . . . .

Ultimately, the district court found that there was a sufficient factual basis for both charges and that Mr. Parra's plea was knowing and voluntary. Accordingly, the district

- 4 -

court accepted Mr. Parra's guilty plea. At sentencing, the district court accepted the plea agreement's provision for a stipulated sentence, imposing a term of 168 months' imprisonment. Mr. Parra's attorney did not file a notice of appeal.

On July 12, 2006, the government filed a motion under 18 U.S.C. § 3553(e) and Fed. R. Crim. P. 35(b) for a reduction of Mr. Parra's sentence based on his significant cooperation with the government. The district court granted the government's motion, reducing Mr. Parra's sentence to 97 months' imprisonment.

On July 14, 2006, Mr. Parra filed a motion for habeas relief under 28 U.S.C. § 2255, contending that his trial counsel was constitutionally ineffective because he failed to file a notice of appeal. The district court denied his motion, but we granted Mr. Parra a certificate of appealability and reversed the district court. *United States v. Parra*, No. 09-8091, 2010 WL 638599 (10th Cir. Feb. 24, 2010). On remand, the district court granted Mr. Parra's § 2255 motion, ordering that his criminal judgment be vacated and reinstated so that he could pursue his direct appeal.

Mr. Parra now appeals, asking that we vacate his money laundering conviction and order resentencing without that conviction.

## II. DISCUSSION

Mr. Parra maintains that the district court violated Rule 11 by accepting his guilty plea to the money laundering charge without (1) obtaining an adequate factual basis for the plea, and (2) determining whether Mr. Parra understood the nature and elements of the offense.

Mr. Parra did not object on Rule 11 grounds during his change-of-plea hearing; therefore, we apply plain-error review. *See United States v. Vonn*, 535 U.S. 55, 58–59, 62–63 (2002). Under this standard, we will not reverse unless Mr. Parra demonstrates (1) error, (2) that is plain, (3) which affects his substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Landeros-Lopez*, 615 F.3d 1260, 1263 (10th Cir. 2010).

A.      Elements of Money Laundering

Count 3 of the indictment charged Mr. Parra with conspiracy to launder money in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i). "[T]he elements of proof under § 1956(a)(1) differ depending on which subsection of that statute forms the basis for the charge in the indictment." *United States v. Torres*, 53 F.3d 1129, 1139 n.7 (10th Cir. 1995). In order to sustain a money laundering conviction under subsection (a)(1)(A)(i), the government must prove that: (1) the defendant conducted or attempted to conduct a financial transaction; (2) which the defendant then knew involved the proceeds of unlawful activity; and (3) the defendant acted with the intent to promote or further unlawful activity. *Id*. at 1136. Although the first two elements are the same under subsection (a)(1)(B)(i), the third element differs: the government must prove that the defendant knew the transaction was designed to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity. *See United States v. Rahseparian*, 231 F.3d 1257, 1264 (10th Cir. 2000). "[T]he essential elements under these two subsections of § 1956(a)(1) are not . . .

- 6 -

interchangeable." *Torres*, 53 F.3d at 1139 n.7.

B.  Adequate Factual Basis

Mr. Parra contends the district court erred by accepting his guilty plea to the money laundering charge because there was an insufficient factual basis to support his conviction. Specifically, Mr. Parra maintains that (1) there was no evidence that he intended to conceal the transaction in any way, and (2) there was no evidence that the funds involved in the relevant transaction qualified as "proceeds."

"Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). The court may consider "anything that appears in the record" when making its determination. *United States v. Keiswetter*, 860 F.2d 992, 996 (10th Cir. 1988) (quotations and emphasis omitted). It is "'incumbent upon the judge to produce a record on the basis of which we can determine that his discretion was not abused.'" *Id.* (quoting *United States v. Dayton*, 604 F.2d 931, 938 (5th Cir. 1979)).

The indictment in this case charged Mr. Parra with violating both subsections of § 1956(a)(1). Accordingly, the government could convict him under either subsection. *See United States v. Gunter*, 546 F.2d 861, 868–69 (10th Cir. 1976) ("It is hornbook law that a crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive."). Furthermore, a showing of concealment was not required so long as there was evidence of promotion.

Here, there was a sufficient factual basis to support a guilty plea to money

laundering under the "promotion" prong of § 1956(a)(1). *See* 18 U.S.C. §

1956(a)(1)(A)(i). During the change-of-plea hearing, Mr. Parra told the court:

> Mr. Jimenez and I—we discussed the—the price for this methamphetamine, *he was supposed to send me—well, send the money to—to pay the sources where we get them from*, and that's pretty much the way.

Moments later, Mr. Parra again informed the court that Mr. Jimenez was supposed to

"[p]ay or send the money to—to us. That way we can pay to the people, whoever we was

supposed to pay for it." When the court asked Mr. Parra if he knew that the money

involved was proceeds from unlawful drug trafficking, Mr. Parra responded, "I do, sir."

Additionally, the Prosecutor's Statement demonstrates that Mr. Parra joined the

drug conspiracy with the ultimate goal of becoming one of Mr. Jimenez's drug sources.

Indeed, the pound of methamphetamine that was discovered in Mr. Sawyer's vehicle was

intended to be a "sample" for Mr. Jimenez, and the money Mr. Parra sought to collect

from Mr. Jimenez was intended to pay Mr. Parra's suppliers for that sample. One could

infer that Mr. Parra would not have been able to obtain further methamphetamine for Mr.

Jimenez unless he first paid for the sample.

Together, Mr. Parra's testimony and the Prosecutor's Statement provide a

sufficient factual basis for Mr. Parra's guilty plea. *See United States v. Moran*, 452 F.3d

1167, 1171 (10th Cir. 2006) ("The factual basis for the plea need not come solely from

the defendant's statements at the plea hearing. Rather, the district court may look to . . .

whatever means [are] appropriate in a specific case—so long as the factual basis is put on

the record.") (quotations and citations omitted). During the Rule 11 colloquy, Mr. Parra

unequivocally acknowledged that he attempted to conduct a financial transaction with knowledge that the transaction involved the proceeds of an unlawful drug trafficking operation. Furthermore, the evidence contained in the Prosecutor's Statement demonstrates that Mr. Parra engaged in this financial transaction with the ultimate goal of becoming an additional drug supplier for Mr. Jimenez, or, in other words, with the intent to promote or further the ongoing drug conspiracy. Indeed, the use of drug trafficking proceeds to purchase additional drugs can, under circumstances like these, constitute "promotion" under § 1956(a)(1)(A)(i). *See Torres*, 53 F.3d at 1137 n.6 (finding that using proceeds from the sale of drugs to buy more drugs "satis[ied] the 'promotion' element of 1956(a)(1)(A)(I)"). *Accord United States v. King*, 169 F.3d 1035, 1039 (6th Cir. 1999) ("Payment for drugs may constitute 'promotion' for the purposes of the money laundering statute when such payment encourages further drug transactions."); *United States v. Baker*, 63 F.3d 1478, 1494 (9th Cir. 1995) (stating that payments to a contraband cigarette supplier was laundering which promoted the carrying on of the unlawful activity because the defendant "could not have continued the illegal trafficking without paying his cigarette suppliers"); *United States v. Skinner*, 946 F.2d 176, 177–78 (2d Cir. 1991) (affirming conviction under § 1956(a)(1)(A)(i) where defendant paid drug suppliers with proceeds from fronted drugs).

Mr. Parra also contends that pursuant to *United States v. Santos*, 553 U.S. 507 (2008), the term "proceeds" must be read as "profits," not "gross receipts," and that there was no evidence that the transaction at issue involved profits. The exact scope of

*Santos*'s holding, however, is unclear. *See Garland v. Roy*, 615 F.3d 391, 403 (5th Cir. 2010) (comparing the various interpretations of *Santos* offered by the First, Third, Fourth, Seventh, Eighth, Ninth, and Eleventh circuits). Indeed, several of our sister circuits have held that *Santos* does not apply in the drug context. *See United States v. Spencer*, 592 F.3d 866, 879–80 (8th Cir. 2010) ("*Santos* does not apply in the drug context."); *United States v. Demarest*, 570 F.3d 1232, 1242 (11th Cir. 2009) (holding that *Santos* is limited to cases involving illegal gambling operations); *United States v. Howard*, No. 07-4146, 2009 WL 205649, at \*\*10 (4th Cir. Jan. 29, 2009) ("*Santos* does not establish a binding precedent that the term 'proceeds' means 'profits,' except regarding an illegal gambling charge."); *United States v. Fleming*, No. 06-3640, 2008 WL 3824752, at \*\*4 (3d Cir. Aug. 15, 2008) ("[T]he term 'proceeds' includes gross revenues for drug sales.").

We need not decide the scope of *Santos*'s holding in this case, however, because even if we were to hold that *Santos* applies in the drug context, the district court's failure to apply *Santos* would not constitute plain error. In order to be plain, an error must be clear or obvious. *United States v. Whitney*, 229 F.3d 1296, 1309 (10th Cir. 2000). "An error is clear and obvious when it is contrary to well-settled law." *Id.* Given the lack of clear authority on the scope of *Santos*, we cannot say that the district court committed a clear and obvious error by failing to require a showing that the transaction at issue involved profits and not merely gross revenues.

For these reasons, we conclude that there was a sufficient factual basis for Mr. Parra's guilty plea.

C.    Understanding of Money Laundering Charge

Mr. Parra also maintains that his plea was not knowing or voluntary because he did not understand the nature of the money laundering charge to which he was pleading guilty. Rule 11 provides that "[b]efore the court accepts a plea of guilty or nolo contendere . . . the court must inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). "In most cases, this requires the court to recite the elements of the offense." *United States v. Ferrel*, 603 F.3d 758, 762 (10th Cir. 2010).

Here, the district court erroneously informed Mr. Parra at the change-of-plea hearing that the government was required to prove both that the "transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of said proceeds; *and* . . . that [he] acted with the intent to promote the carrying on of the specified unlawful activity." Moreover, the plea agreement did not contain a recitation of the elements of money laundering, and the Prosecutor's Statement incorrectly indicated that proof of both concealment and promotion was required for the money laundering conviction. Our case law and the statute itself make it clear, however, that the government needed only to prove either promotion or concealment. *See Torres*, 53 F.3d at 1139 n.7; 18 U.S.C. § 1956(a)(1). Thus, the district court incorrectly informed Mr. Parra concerning the elements of money laundering and that error was plain.

Nevertheless, Mr. Parra cannot satisfy the third prong of plain-error review. To

- 11 -

establish that the alleged error affected his substantial rights, Mr. Parra must show a reasonable probability that, but for the error, he would not have pleaded guilty. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). Mr. Parra admits that "there is nothing on the record to show that despite his confusion, he would not have pled guilty to money laundering." Nevertheless, he argues that if he had been "properly advised by the district court, he would have known not to plead guilty to a crime he did not commit."

As discussed above, there was a sufficient factual basis for Mr. Parra's guilty plea. Moreover, his claim is undermined by the fact that the elements for conviction under the promotion prong of § 1956(a)(1) required the government to prove less—not more—than he originally believed. Under the elements as stated by the district court, Mr. Parra believed the government had to prove both promotion and concealment. And it was with that understanding that he decided to plead guilty. Mr. Parra has not shown a reasonable probability that he would have decided not to plead guilty if he had known that the government needed to prove only one or the other. Accordingly, his claim fails under plain-error review.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's acceptance of Mr.

Parra's guilty plea.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge

- 13 -