# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2531

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| William Patrick Griffin, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: January 11, 2000

Filed: June 22, 2000

_____

Before BOWMAN and LOKEN, Circuit Judges, and ALSOP,[*] District Judge.

_____

LOKEN, Circuit Judge.

William Patrick Griffin purchased meat from various wholesalers and retailers and resold it to St. Louis consumers, selling door-to-door from his truck. When customers paid Griffin with food stamps issued by the United States Department of Agriculture, he sold the food stamps for ninety-five percent of their face value to Jacqueline Murphy, a former co-worker. Murphy had obtained USDA authorization

_____

[*]The HONORABLE DONALD D. ALSOP, United States District Judge for the District of Minnesota, sitting by designation.

to redeem food stamps in the name of a sham company, "Jacque's Meats," and purchased food stamps from a number of sources, including Griffin, for a relatively small fee. After USDA uncovered Murphy's unlawful activities, Griffin was indicted for the unauthorized transfer of food stamps in violation of 7 U.S.C. § 2024(b).

At trial, Murphy testified for the government that she wrote 58 checks to Griffin totaling $15,486.50, all for the purchase of food stamps. It is undisputed that Griffin was not authorized by USDA to accept food stamps and redeem them with Jacque's Meats. See generally 7 C.F.R. §§ 278.1, 278.2(a) & (g), 278.3(a). The jury convicted Griffin of violating 7 U.S.C. § 2024(b), and the district court sentenced him to twelve months and one day in prison. Griffin appeals his conviction, arguing the court erred in excluding defense evidence and in instructing the jury. He also raises two sentencing issues. We conclude the district court erred in calculating the amount of loss for sentencing purposes under U.S.S.G. § 2F1.1 but otherwise affirm.

## I. The Exclusion of Evidence Issue

At trial, Griffin admitted he sold food stamps to Murphy for ninety-five percent of their face value. His defense was that Murphy was his employer, he thought it appropriate to redeem the food stamps in this manner, and therefore he did not knowingly engage in unauthorized food stamp transfers. See Liparota v. United States, 471 U.S. 419 (1985) (violation of 7 U.S.C. § 2024(b) must be knowing). In support of that theory, Griffin offered to introduce testimony by others that he referred to Murphy as his "boss" and regularly spoke of having a boss, that he always produced a business license when he came to sell meat, that Murphy purchased meat from Griffin, and that Murphy offered to sell meat to her co-workers (contrary to her cross examination testimony). On appeal, Griffin argues the district court erred in excluding this evidence. We review the court's evidentiary rulings for abuse of discretion. See United States v. Logan, 49 F.3d 352, 358 (8th Cir. 1995).

Griffin failed to introduce documentary evidence that Murphy employed him, such as an employment contract or tax forms. Griffin admitted he did not obtain the meat he sold from Murphy, nor did he turn over any of his cash receipts to her -- he merely cashed in food stamps with Murphy in transactions seemingly independent of his meat purchases from third party vendors and resales to consumers. With no objective supporting evidence, Griffin's testimony that he believed he was Murphy's employee was insufficient to prove an employment relationship, and the district court properly excluded testimony by third persons as to Griffin's self-serving, out-of-court declarations that he was her employee. Testimony that Griffin displayed a business license and sold meat to Murphy would not have proved he was her employee and was not otherwise relevant to whether he knowingly engaged in unauthorized food stamp transfers. Testimony that Murphy sold meat to others was collateral impeachment. See Fed. R. Evid. 608(b). Accordingly, we conclude the district court did not abuse its substantial discretion in excluding all of this evidence.

## II. The Instruction Issue

The indictment alleged that Griffin "knowingly transferred Food Stamp Coupons in a manner contrary to [law], that is, defendant sold . . . Food Stamp Coupons for . . . cash." The district court instructed the jury that it should find Griffin guilty if he "knowingly transferred food stamp coupons . . . in a manner not authorized by [7 U.S.C. § 2024(b)] or the regulations issued pursuant to the [statute]." Griffin argues this instruction constructively amended the indictment because, by failing to specify that he "sold" food stamps, it permitted the jury to convict him of transferring them by some method other than selling. This issue was not raised in the district court so we review the instruction, if at all, for plain error.

A variance between the facts charged in a criminal indictment and the evidence offered by the government at trial requires a new trial if it prejudices the defendant, for example, by depriving him of adequate notice of the charges he must defend. See

-3-

United States v. Begnaud, 783 F.2d 144, 147 n.4 (8th Cir. 1986). On the other hand, if the variance is so fundamental that it permits the jury to convict the defendant of a different crime than that charged, it is a constructive amendment of the indictment that -

> destroy[s] the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error.

Stirone v. United States, 361 U.S. 212, 217 (1960). A jury instruction constructively amends the indictment if it modifies the essential elements of the offense charged in the indictment. See United States v. Slaughter, 128 F.3d 623, 628 (8th Cir. 1997).

In this case, the indictment charged that Griffin violated 7 U.S.C. § 2024(b) by engaging in unauthorized transfers of food stamp coupons. The court's instruction precisely tracked that charge. The indictment also alleged, more specifically, that the transfers at issue were sales. The instruction did not repeat that portion of the charge. But the only transfers placed in evidence at trial were Griffin's sales of food stamps to Murphy. In other words, there is no possibility that the jury convicted Griffin of an offense other than the one charged in the indictment. This was not a constructive amendment; indeed, it was not even a variance. Therefore, the court's decision to eliminate a redundant reference to sales in its instruction was not an abuse of discretion, much less plain error.

## III. The Amount of Loss for Sentencing

In Chapter Two of the Guidelines, each type of offense is assigned a base offense level, which is then increased or decreased in a particular case if an enumerated Specific Offense Characteristic is present. Appendix A to the Guidelines Manual provides that the section governing fraud offenses, U.S.S.G. § 2F1.1, applies to

-4-

violations of 7 U.S.C. § 2024(b). Section 2F1.1 provides a base offense level of six, to be increased by up to eighteen additional levels based upon the amount of fraud loss the defendant caused his victim(s). See § 2F1.1(b). This Specific Offense Characteristic furthers Congress's intent that the Guidelines reflect the "nature and degree of harm caused by the offense." 28 U.S.C. § 994(c)(3); see United States v. Maurello, 76 F.3d 1304, 1308-13 (3d Cir. 1996). In this case, the district court determined that the amount of loss is the entire proceeds from Griffin's food stamp sales to Murphy, $15,486.50, because his unauthorized transfers harmed USDA's "strong interest in making sure that the integrity of [the food stamp] program is maintained." Griffin argues the court erroneously construed and applied the amount-of-loss offense characteristic in § 2F1.1(b). We agree.

In general, the amount of loss under § 2F1.1(b) is the fraud victim's actual loss, or the loss the defendant intended to inflict, whichever is greater. See United States v. Baker, 200 F.3d 558, 561 (8th Cir. 2000). The unauthorized transfer of government food stamps is a regulatory offense that is only imperfectly analogous to fraud. Fortunately, the Sentencing Commission recognized this problem and provided specific guidance: "[i]n case[s] involving diversion of government program benefits, loss is the value of the benefits diverted from intended recipients." U.S.S.G. § 2F1.1, comment. (n. 8(d)). Here, USDA issues food stamps; it is not an "intended recipient." Therefore, damage to the integrity of its program is not an element of loss under § 2F1.1(b). This conclusion is confirmed by the Sentencing Commission's more general discussion of regulatory offenses in the introductory portion of the Guidelines:

> [T]he Commission has developed a system for treating technical recordkeeping and reporting offenses that divides them into four categories. First, in the simplest of cases, the offender may have failed to fill out a form intentionally, but without knowledge or intent that substantive harm would likely follow. . . . Second, the same failure may be accompanied by a significant likelihood that substantive harm will occur . . . . Third, the same failure may have led to substantive harm.

-5-

> Fourth, the failure may represent an effort to conceal a substantive harm that has occurred.
>
> The structure of a typical guideline for a regulatory offense provides a low base offense level (e.g., 6) aimed at the first type of recordkeeping or reporting offense. Specific offense characteristics designed to reflect substantive harms that do occur in respect to some regulatory offenses, or that are likely to occur, increase the offense level.

U.S.S.G. Ch. 1, Pt. A, ¶ 4(f). Under this Guidelines structure, the proper penalty for the harm to the integrity of the food stamp program is the base offense level, six. Any incremental punishment for loss must be based upon the defendant's actual or intended diversion of program benefits from food stamp recipients.

Having concluded the case must be remanded for resentencing because the district court misapplied § 2F1.1(b), we offer some additional comments concerning how loss might appropriately be determined in this rather unusual case. Food stamps are distributed "for the sole purpose of ensuring that every citizen of this nation receives sufficient nutrition to enjoy a healthy existence." United States v. Barnes, 117 F.3d 328, 335 (7th Cir. 1997). Thus, when a defendant purchases food stamps from their intended recipients for cash, he deprives them of the intended program benefits, food. The loss, both intended and actual, is the full face value of the food stamps unlawfully purchased. That has been the fact pattern in most food stamp cases, such as Barnes and United States v. Brown, 136 F.3d 1176, 1183-84 (7th Cir. 1998), and courts have properly focused on estimating how many food stamps the defendants purchased for cash, as opposed to groceries. Here, on the other hand, Griffin sold meat to the food stamp program's intended recipients and resold the stamps to Murphy. He was not authorized to engage in either transaction, but the face amount of the food stamps bears little if any relationship to the harm he inflicted on food stamp recipients. By not obtaining USDA authorization, Griffin evaded program requirements intended to ensure that recipients receive nutritious food at prices comparable to those charged

other food purchasers. The government did not attempt to prove that Griffin in fact deprived food stamp recipients of these program benefits, which would warrant a § 2F1.1(b) adjustment. It is free to do so on remand.

In his brief on appeal, Griffin notes that he raised his meat prices five percent to cover the discounted price he received in reselling food stamps to Murphy. He suggests that five percent of $15,486.50 would therefore be an appropriate amount of loss. The district court is permitted to estimate the amount of loss under § 2F1.1. See Application Note 9. Perhaps this is a reasonable estimate. That issue must be addressed in the first instance by the district court.

If the district court concludes that Griffin's five percent surcharge did not reflect the value of benefits diverted from food stamp recipients, and if the court finds that his violation did not involve either an actual or intended diversion of program benefits that can be reasonably estimated, then it would appear Griffin has committed what the Commission refers to as a category one regulatory offense, for which the unadjusted base offense level is appropriate. This may seem anomalous, since it would produce the same total offense level whether Griffin made unauthorized sales of $15,000 or $15,000,000 worth of food stamps. But the Commission has recognized that § 2F1.1 applies to a wide variety of offenses and may not yield a suitable result in every case: "In cases in which the loss determined under subsection (b)(1) does not fully capture the harmfulness and seriousness of the conduct, an upward departure may be warranted." U.S.S.G. § 2F1.1, comment. (n.11).

## IV. The Minor Participant Adjustment

Griffin argues the district court erred in refusing to grant him a two-level minor participant downward adjustment. See U.S.S.G. § 3B1.2(b). A minor participant is "any participant who is less culpable than most other participants, but whose role could not be described as minimal." § 3B1.2, comment. (n.3). We review the district court's

finding on this issue for clear error. See United States v. Field, 110 F.3d 587, 590 (8th Cir. 1997). Griffin argues he was a "mere meat salesman," less culpable than those "higher up in the chain." But as the district court recognized, Griffin failed to prove his claim to be a mere employee in an elaborate food stamp scheme initiated by Murphy and her contacts at other meat supply firms. Instead, the evidence established that Griffin ran his own small retail meat operation, selling the food stamps he received to Murphy rather than applying for USDA authorization to receive and redeem them. On this record, the district court's finding that Griffin and Murphy were equally culpable is not clearly erroneous.

William Patrick Griffin's conviction is affirmed. For the reasons stated, the judgment of the district court is reversed and the case is remanded for resentencing.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.