

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-15-2008

# USA v. Fleming

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3640

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Fleming" (2008). *2008 Decisions.* Paper 649.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/649

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 06-3640, 07-2369, and 07-2822
_____

UNITED STATES OF AMERICA
v.
DANIEL FLEMING,

Appellant No. 06-3640

_____

UNITED STATES OF AMERICA
v.
RUSSELL ROBINSON,

Appellant No. 07-2369

_____

UNITED STATES OF AMERICA
v.
CRAIG M. HENDRICKS,

Appellant No. 07-2822

_____

On Appeal from the District Court
of the Virgin Islands
D.C. Criminal Nos. 04-cr-0005-4
04-cr-0005-2
04-cr-0005-1
District Judge: Honorable James T. Giles

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 6, 2008

Before: RENDELL, FUENTES, and CHAGARES, Circuit Judges.

(Filed:  August 15, 2008)

1

_____

OPINION OF THE COURT

_____

FUENTES, <u>Circuit Judge</u>.

In April 2003, a grand jury handed down a twelve count indictment against Craig

Hendricks, Russell Robinson, and Daniel Fleming, along with other co-defendants who

are not involved in this appeal. Hendricks was alleged to be the leader of a large

narcotics-trafficking organization in which the other defendants participated. All three

defendants were convicted and now, separately, appeal their convictions. As a result of

various motions, these appeals were consolidated for our review. For the reasons set

forth below, we will affirm the judgments of conviction.

I.

One of the government's planned witnesses, Hector Rivera, who was originally

involved in the narcotics conspiracy with the co-defendants and became a confidential

informant ("CI"), provided the government with taped conversations, videos of drug

transactions, and information leading to a wiretap of the co-defendants. Prior to trial,

Rivera was murdered by an unknown person. The District Court then denied the

government's motion <i>in limine</i> seeking to admit conversations involving Rivera, based on

its reading of <u>Crawford v. Washington</u>, 541 U.S. 36 (2004). The government appealed

that order and we reversed. <u>See</u> <u>United States v. Hendricks</u>, 395 F.3d 173 (3d Cir. 2005)

("<u>Hendricks I</u>"). The case proceeded to trial and the jury convicted Hendricks, Robinson,

and Fleming of three conspiracy counts: to import drugs, to distribute drugs, and to launder money. In addition, Hendricks and Fleming were convicted of narcotics possession and distribution, and Hendricks was convicted of three additional counts of narcotics possession and distribution.

On appeal, each defendant raises separate issues. Hendricks argues that there was insufficient evidence to support his money laundering conviction, that he was denied access to counsel because he was held in Puerto Rico during the trial, and that the District Court erred by admitting Rivera's tape recorded and video taped statements, and by admitting all of the statements relating to Rivera without performing an individualized review of the reliability of each statement. Fleming argues that the transfer of the trial from St. Thomas to St. Croix violated his due process rights and that there was insufficient evidence to support his possession and distribution conspiracy conviction, his drug trafficking conspiracy conviction, and his money laundering conspiracy conviction. Robinson, who is proceeding *pro se* on appeal, claims that the District Court did not have jurisdiction over the case because of the prosecutors' alleged failure to file their oaths of office with the clerk of the Virgin Islands District Court, that there was insufficient evidence to convict him on any count, that the District Court should have acquitted him because of inconsistent verdict form responses, that he was denied the right to represent himself during trial, and that there were "[s]tructural and other trial errors." (Robinson Br. at 19.)

II.

3

In this opinion, we will focus on the Confrontation Clause issue that Hendricks raises in his briefs. We will review the question of whether the admission of evidence at trial was error under the Confrontation Clause *de novo*. Hendricks I, 395 F.3d at 176. We previously addressed the Confrontation Clause issue in this case on interlocutory appeal brought by the government in Hendricks I. In that opinion, we interpreted, for the first time, the meaning of testimonial evidence as discussed in Crawford. On appeal, Hendricks argues that our decision in Hendricks I has been cast into doubt after the Supreme Court's decision in Davis v. Washington, 547 U.S. 813 (2006). He argues that two types of evidence were produced at trial in violation of his Confrontation Clause rights: video tapes made by CI Rivera and testimony by the case agent regarding statements made by Rivera. His arguments fail, for the reasons set forth below.

First, with respect to the video evidence, the government introduced a videotape at trial, made by CI Rivera on March 2, 2003. On that day, Rivera was given $23,000 from the government to purchase drugs from Hendricks. The portions of the videotape shown at trial showed Hendricks counting money inside his house and Rivera meeting with Fleming. Rivera returned from Hendricks's house with three kilograms of cocaine and, later, most of the money was found in Hendricks's home. Hendricks argues that Davis extended the scope of Crawford to cover "*tangible items*," and thus the introduction of the video was error. (Hendricks Br. at 60 (emphasis in brief).)

Hendricks's claim fails. Only *testimonial* hearsay is subject to the Confrontation Clause. Davis, 547 U.S. at 821. In Crawford, the Supreme Court declined to provide an

exhaustive definition of what makes a statement testimonial. Id. at 51-52. However, the court provided examples of testimonial statements, including police interrogations. Id. at 52. In Davis, the Supreme Court explained that even police interrogations are not testimonial "when made . . . under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Id. at 822. Thus, in essence, Davis worked to narrow the definition of testimonial evidence, not broaden it.

Hendricks misses the mark by arguing that the only relevant inquiry is whether the evidence at issue was made for the purpose of prosecution. As noted above, Crawford declined to provide a comprehensive definition of testimonial. However, it provided guidance that makes clear that the video in this case is not testimonial. The Crawford Court explained that the Confrontation Clause applies to:

> witnesses against the accused – in other words, those who bear testimony. Testimony, in turn, is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact. An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.

Crawford, 541 U.S. at 51 (quotations and citations omitted). The Court went on to determine that "[s]tatements taken by police officers in the course of interrogations are . . . testimonial." The visual aspect of the video is not testimonial as there is no "statement" that could be construed to be testimonial. The audio aspect[1] is similarly not testimonial as

---

[1] The government claims that it is "highly doubtful [that] the jury could make out any intelligible conversation from the tape." (Gov't Br. at 40.)

5

the statements made are not "solemn declaration[s]" but "casual remark[s]" made to acquaintances in furtherance of the drug transaction. Further, the audio, to the extent it was audible, was admissible, as to comments by Hendricks or Fleming, as statements of a party opponent pursuant to Federal Rule of Evidence 801(d)(2), and, as to comments by Rivera, in order to place Hendricks's and Fleming's statements in context. Hendricks I, 395 F.3d 183.

Secondly, Hendricks argues that the District Court erred, on remand from this court, by making a blanket decision to admit statements related to CI Rivera, rather than analyzing the statements on an individual basis. This contention lacks merit – the District Court performed a pretrial hearing to determine that the evidence in question was authentic and otherwise admissible, as it was directed to do in Hendricks I. Hendricks specifically disputes the District Court's decision to admit testimony by government witness Christopher Schoenbohm, who testified about a drug transaction involving Hendricks, which Schoenbohm sent Rivera to handle. Hendricks complains that Schoenbohm, who was not present at the transaction, could have only known about the conversations because they had been relayed to him by Rivera. However, as these conversations took place before Rivera became a CI, they fell under the hearsay exception for coconspirator statements in Federal Rule of Evidence 801(d)(2)(E).

Finally, Hendricks complains that Agent Tokarz was allowed to testify as to conversations that he had with Rivera, and about events that he could have only known about through conversations with Rivera. Because he was not asked to testify as to any

6

statements made during out of court conversations, Agent Tokarz's testimony regarding the existence of, but not the content of, conversations does not present a hearsay problem. Fed. R. Evid. 801(a), (c). In addition, the fact that Agent Tokarz instructed CI Rivera to make taped conversations with Hendricks and on what to say does not present a hearsay problem. Fed. R. Evid. 801(c). The tapes themselves were admissible for the reasons discussed in Hendricks I.

We note briefly that, with respect to the sufficiency of the evidence claims, the burden on a defendant to obtain relief is very high. United States v. Leahy, 445 F.3d 634, 657 (3d Cir. 2006) (quoting United States v. Dent, 149 F.3d 180, 187 (3d Cir.1998)). In order to prevail on a insufficiency of the evidence claim, a defendant must show, viewing the evidence in the light most favorable to the government, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See id. The defendants in this case have failed to meet that heavy burden.

Subsequent to the original briefing in this case, Robinson submitted a 28(j) letter, asking us to consider the impact of Cuellar v. United States, 128 S.Ct. 1994 (2008) on his money laundering conspiracy conviction. In Cuellar, the Supreme Court held that the government must show that a defendant charged with transporting the proceeds of unlawful activity across a border in order to "conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity" in violation of 18 U.S.C. § 1956(a)(2)(B)(i), knew that the transportation was designed to conceal or disguise one of the listed attributes of the funds. We asked the government to

7

respond to Robinson's letter. The government did so, noting that Robinson was convicted of a money laundering conspiracy count, not a substantive money laundering count. Accordingly, the government needed only to show that Robinson joined Hendricks's conspiracy to engage in financial transactions designed to conceal or disguise a listed attribute of the funds. Based on the evidence proven at trial, the jury could have reasonably inferred that Robinson knew the purpose of removing the drug proceeds from the country because, among other reasons, the government showed that Robinson regularly flew money for Hendricks to St. Martin and was a close confidante of Hendricks's.

In addition, subsequent to the original briefing in this case, Fleming submitted a 28(j) letter pro se, asking us to consider, among other things, the impact of United States v. Santos, 128 S.Ct. 2020 (2008) on his money laundering conspiracy conviction. Fleming asks for his conviction on this count to be reversed because the government failed to show, as the plurality in Santos would have required, that the "proceeds" that Fleming laundered were profits, rather than gross receipts, from the drug conspiracy. However, as Justice Alito points out in his dissent, "five Justices agree with the position" that "the term 'proceeds' 'include[s] gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales.'" Santos, S.Ct. at 2035 & n.1 (quoting Justice Stevens's concurrence). Therefore, even if the government did not show that the money involved in Fleming's money laundering conviction was profits from the drug sales, his conviction on this count must stand because, as we have stated,

8

the term "proceeds" includes gross revenues for drug sales.

We have carefully considered all of the other claims and conclude that none have merit.

III.

For the reasons stated above, we will affirm the judgments of conviction.