# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1196

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Antwoyn Terrell Spencer, | * | |
| | * | |
| Appellant. | * | |

_____

No. 09-1197

_____

Appeals from the United States
District Court for the
District of Minnesota.

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Derrick Jerome Spencer, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 20, 2009
Filed: January 21, 2010

_____

Before COLLOTON, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Antwoyn Terrell Spencer and Derrick Jerome Spencer were tried together in district court[1] on charges of cocaine distribution. The jury convicted Antwoyn of conspiracy to distribute cocaine, attempted possession with intent to distribute it, and money laundering. The jury convicted Derrick of conspiracy to distribute cocaine, and two counts of distributing it. The brothers appeal, alleging trial and sentencing error. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

On May 21, 2007, a grand jury indicted four defendants: brothers Antwoyn, Derrick, and Frederick Spencer, and Jovan Gentle. Frederick Spencer was acquitted. Jovan Gentle, a seller for Antwoyn and Derrick, was a fugitive at the time of trial.

A. The conspiracy to distribute cocaine

Count 1 charges that Antwoyn, Derrick, and Jovan Gentle "knowingly and intentionally conspired with each [other] and with others to distribute" cocaine and crack cocaine.

The government offered testimony of several co-conspirators, including Jermaine Richardson and Vontrell Williams. Richardson testified that for two years, he and Derrick sold cocaine and crack regularly. Richardson indicated that Derrick got the drugs from his brother Antwoyn. Richardson's testimony included this exchange:

---

[1] The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

Q. During the period of 1998 on until your arrest [in June 2006], how much time did you spend with Derrick?

A. At first really not too much, but probably like the last two years or year and a half of that, I spent a lot of time with him.

Q. And the last two years, that's when you were getting those big amounts from Antwoyn Spencer?

A. Yeah.

Q. And were you out on the streets selling those amounts?

A. Was I?

Q. Well, breaking it down and selling it in smaller amounts?

A. Yeah, that's how I sold it, in smaller amounts.

Q. And did you ever ride around and do that same thing with Derrick?

A. I did.

Co-conspirator Williams testified that from 1998 to 2001, he ordered about 80 kilograms of cocaine from Antwoyn, and that Derrick frequently delivered the drugs on Antwoyn's behalf. He further testified that after getting out of prison in April 2005, he started getting cocaine from Antwoyn again.

The government also cited the interrupted delivery by John Nguyen to Antwoyn, discussed below, as evidence of the drug conspiracy.

The jury received conspiracy instructions tracking Eighth Circuit Model Criminal Jury Instruction § 5.06A-B, and convicted Antwoyn and Derrick on the conspiracy count.

B.  Antwoyn's attempted possession with intent to distribute cocaine

Police arrested John Nguyen in Wichita, Kansas, after seizing eight kilograms of cocaine at a traffic stop.  Nguyen told police he was a mule regularly delivering cocaine from Texas to Antwoyn in Minnesota, and that the seized cocaine was on its way to Antwoyn.  About 14 hours after Nguyen's arrest (and two hours after Nguyen would have delivered the load), Nguyen's cell phone received a call from Antwoyn's number.  No one answered.

Nguyen testified against Antwoyn at trial.  He stated that he had delivered, or attempted to deliver, 32 kilograms of cocaine to Antwoyn between early 2006 and his arrest on August 15, 2006.  The government offered evidence to corroborate Nguyen's testimony.  First, at the time of the Wichita stop, Nguyen had multiple phone numbers for Antwoyn stored in two cell phones.  The government established a calling history between the Spencers and Nguyen, which included a call Nguyen received, two days before his arrest, from a phone traced back to Derrick.  Second, the eight kilograms of cocaine seized at Wichita were distinctively packaged like a kilogram of cocaine seized from Jermaine Richardson two months earlier.  Third, according to other cooperating witnesses, Antwoyn's cocaine source in the summer of 2006 was an Asian male from Texas.

C.  Derrick's distribution of cocaine

Jovan Gentle, cooperating with law enforcement, made two controlled purchases of powder cocaine from Derrick.  Each time, he wore a transmitting device.  Gentle subsequently disappeared and was a fugitive at the time of trial (following the trial, he was caught, pled guilty, and sentenced).  The government proved the two transactions by two types of evidence:  the tape-recorded conversations between Derrick and Gentle, and observations of surveillance officers.

## D. Antwoyn's money laundering

Before buying a home in Brooklyn Park, Minnesota, in 2005, Antwoyn gave cash to third parties in exchange for checks, which he deposited in his bank account. He also deposited $4,000 cash there. Antwoyn then used funds from this account to buy a cashier's check for $22,900, which he presented at closing. Antwoyn purchased the home in his own name.

IRS Special Agent Daniel Nye testified that his analysis excluded any legitimate funds as sources of the money for the home purchase. Antwoyn did not object to Nye's testimony.

## E. Counsel for Frederick Spencer's opening statement

During opening statements, counsel for Frederick Spencer stated to the jury:

> Fred Spencer is accused of two counts of money laundering. The Government will tell you that he [Frederick] is involved with his brothers Antwoyn and Derrick in this alleged drug trafficking ring and that he is allowing some of their drug proceeds to flow to his business.
>
> You will hear another story from Fred Spencer, however. You will hear directly from Fred Spencer. He has always been cooperative. He's not going to hide behind the Fifth Amendment.

Antwoyn and Derrick objected. The court gave the jury the following curative instruction, to which all parties agreed:

> [Counsel for Frederick Spencer] has acknowledged that [his] statement was an inadvertent mischaracterization of the law, and you may not consider it in your deliberations. Please keep in mind that the defendant in a criminal case has an absolute right under the United States Constitution not to testify. The fact that a defendant does not testify

cannot be discussed or considered by the jury in any way when you are considering and arriving at your verdict. But keep in mind that no inference of any kind may be drawn from the fact that other defendants may or may not decide to exercise their privilege under the constitution and not testify.

Frederick was acquitted and is not party to this appeal.

## F. Drug-quantity determinations

The district court agreed with the drug quantities recommended in the presentence reports, finding Antwoyn responsible for 213.4 kilograms of cocaine and 56.6 kilograms of crack cocaine (1,174,680 kilograms of marijuana equivalency), and Derrick responsible for 677.52 grams of cocaine and 13.3 kilograms of crack cocaine (266,135.5 kilograms of marijuana equivalency). These quantities were "based on the testimony of trial witnesses." With respect to Antwoyn, the district court reviewed "the trial transcript in preparation for sentencing -- with particular attention to the testimony of Vontrell Williams, Yama Tunson, Oliver Scott, and Jermaine Richardson" and concluded "the quantities suggested by these witnesses were proven by a preponderance of the evidence." With respect to Derrick, the district court reviewed "the trial transcript in preparation for sentencing -- with particular attention to the testimony of Vontrell Williams" and concluded "the quantities suggested by these witnesses were proven by a preponderance of the evidence."

## G. Sentences

The district court sentenced Antwoyn to concurrent 324 month terms on two counts – conspiracy, and attempted possession with intent to distribute cocaine. It also imposed a concurrent sentence of 240 months on the money-laundering count.

The district court sentenced Derrick to 292 months on the conspiracy count and a concurrent 240 months on the distribution counts.

## II.

### A.  The conspiracy to distribute cocaine

Antwoyn and Derrick contest their conspiracy convictions, arguing:  (1) the conspiracy instructions impermissibly amend the conspiracy charged in the indictment, and (2) the government failed to prove that either Antwoyn or Derrick acted to further the conspiracy within the five-year statute of limitations.

### 1.  Jury instructions

Antwoyn and Derrick argue that the district court's jury instructions 20 and 21, which track Eighth Circuit Model Criminal Jury Instruction § 5.06A-B, constructively amend the indictment.  A constructive amendment of an indictment occurs when jury instructions broaden the scope of an indictment by permitting a conviction for an uncharged offense.  *See United States v. Griffin*, 215 F.3d 866, 868-69 (8th Cir. 2000); *United States v. Begnaud*, 783 F.2d 144, 147 (8th Cir. 1986).

Ordinarily, this court reviews jury instructions *de novo*.  But here, both defendants acknowledge that they never objected to the instructions below, and thus review is for plain error.  *See United States v. Smith*, 450 F.3d 856, 859 (8th Cir. 2006); *United States v. Gavin*, 583 F.3d 542, 546-47 (8th Cir. 2009).

Count 1 charges that Antwoyn, Derrick, and Gentle "knowingly and intentionally conspired with each [other] and with others to distribute" cocaine and crack cocaine.  Jury instruction 20 states that one essential element of conspiracy is

-7-

that "two or more persons reached an agreement or came to an understanding to distribute cocaine or crack cocaine." Jury instruction 21 states in relevant part:

> The prosecution must prove that each of the defendants charged in Count 1 reached an agreement or understanding with at least one other person. It makes no difference whether that other person is a defendant or named in the indictment. You do not have to find that all the persons charged were members of the conspiracy.

Antwoyn and Derrick argue that these instructions constructively amend the indictment "because the indictment required the jury to find the defendants guilty of the crime of conspiracy with each other, while Instruction 20 [and 21] specifically instructed the jury could find either or both Spencers guilty of simply conspiring with *any other person*, and therefore, *not* each other."

Instructions 20 and 21 do not amend the indictment, because the indictment does not require "the jury to find the defendants guilty of the crime of conspiracy with each other" as the Spencers insist. A defendant can be convicted of conspiracy even if the jury concludes that not everyone alleged to be involved in the conspiracy actually participated. *See Berger v. United States*, 295 U.S. 78, 81 (1935) ("It is settled by the great weight of authority that although an indictment charges a conspiracy involving several persons and the proof establishes the conspiracy against some of them only, the variance is not material."). If Derrick were acquitted, Antwoyn could be convicted for conspiring with others, and vice versa. *See, e.g., United States v. Allen*, 613 F.2d 1248, 1253 (3d. Cir. 1980) (where the indictment charged Allen, Cooper, and Meador unlawfully conspired to sell drugs with each other *and* with persons known and unknown, "the question is not whether there was sufficient evidence that Allen conspired with Meador and/or Cooper, but whether there was sufficient evidence that he conspired with some other person.").

The indictment in this case specifically states that the defendants conspired with each other *and with others*. "An indictment may be phrased in the conjunctive, when

-8-

the statute and jury instructions are phrased in the disjunctive, without creating a constructive amendment of the indictment . . . ." *United States v. Thompson*, 560 F.3d 745, 748 (8th Cir. 2009), *quoting* **United States v. Brown**, 330 F.3d 1073, 1078 (8th Cir. 2003); *see also* **United States v. Behler**, 14 F.3d 1264 (8th Cir. 1994).

In *Behler*, Count 1 charged a conspiracy "with Thomas Stephen McRea and others" to distribute methamphetamine. During deliberation, the jury asked the court: "Does Thomas Stephen McRea have to be a part of the conspiracy to enable a guilty verdict on Count #1?" The district court answered "no." *Id.* at 1269. This court affirmed, applying *United States v. Lueth*, 807 F.2d 719, 732-34 (8th Cir. 1986), which approved an instruction that the jury could convict the defendant of conspiracy to distribute cocaine or marijuana or both, where the indictment charged conspiracy to distribute cocaine and marijuana. This court reasoned that "by changing the language of the prior instruction from the conjunctive to the disjunctive, 'what was removed from the case was in no way essential to the offense on which the jury convicted.'" *Behler*, 14 F.3d at 1270, *quoting* **Lueth**, 807 F.2d at 734. *Compare* **United States v. Yeo**, 739 F.2d 385 (8th Cir. 1984) (finding a constructive amendment where the indictment charged that Yeo used "extortionate means to collect and attempt to collect [a debt] from Jim Crouch," and the jury instruction stated that Yeo could be found guilty for using "extortionate means to collect [a debt] from Jim Crouch *or another*.").

The indictment here is phrased in the conjunctive. Under *Behler*, the jury instructions in the disjunctive do not constructively amend the indictment. The district court did not commit plain error by giving model jury instructions consistent with the law.

Antwoyn and Derrick contend that if the jury instructions do not constructively amend the indictment, then Count 1 of the indictment is duplicitous, inappropriately joining multiple offenses in a single count. *See* **United States v. Moore**, 184 F.3d 790, 793 (8th Cir. 1999) ("'Duplicity' is the joining in a single count of two or more

distinct and separate offenses."); ***United States v. Karam***, 37 F.3d 1280, 1286 (8th Cir. 1994) ("The principal vice of a duplicitous indictment is that the jury may convict a defendant without unanimous agreement on the defendant's guilt with respect to a particular offense.").  Antwoyn and Derrick posit that the jury could have convicted Antwoyn of conspiracy if seven jurors believed that he conspired with (only) Derrick, while the other five believed that he conspired with (only) Richardson.  The Spencers conclude that this is reversible error where, as here, no jury instruction addresses the duplicity.[2]  *Cf. **Karam***, 37 F.3d at 1286 ("[A]ssuming arguendo that Count IV of the indictment is duplicitous, we believe that the district court's instructions to the jury cured the duplicity.  The district court instructed the jury that it 'must unanimously agree upon at least one particular distribution that the defendant is alleged to have made.'").

Antwoyn and Derrick waived this argument by failing to object to the allegedly duplicitous count before trial.  *See **United States v. Prescott***, 42 F.3d 1165, 1167 (8th Cir. 1994) ("We have held that the failure to object to duplicitous counts is a waiver of that defense."); **Fed. R. Crim. P.** 12(b)(3) (listing "a motion alleging a defect in the indictment" among "motions that must be made before trial.").

Even if this argument were not waived, the indictment was not duplicitous. Under *Lueth*, the government can prove its case in the disjunctive where the indictment alleges, in the conjunctive, that the defendant committed the same offense (conspiracy to distribute controlled substances) in more than one way (by selling cocaine *and* by selling marijuana).  807 F.2d at 733-34.  In this context, indicting in the conjunctive does not render a charge duplicitous.  *See **Moore***, 184 F.3d at 793 ("Enumerating the controlled substances did not render count I duplicitous."), *citing **Lueth***, 807 F.2d at 734.

---

[2] As the district court noted, Antwoyn's counsel requested (successfully) that the multiple conspiracies jury instruction be withdrawn (while the prosecutor desired to include it out of an abundance of caution).

*Behler* adopts the *Lueth* rule where the indictment lists conspirators, rather than drugs, in the conjunctive. 14 F.3d at 1270. Under *Behler*, the government can prove its case in the disjunctive where an indictment alleges, in the conjunctive, that the defendant committed the same offense (conspiracy to distribute controlled substances) in more than one way (by conspiring with one co-conspirator *and* others). By analogy, enumerating the co-conspirators does not render a count duplicitous. *See Moore*, 184 F.3d at 793 ("Enumerating the controlled substances did not render count I duplicitous."), *citing Lueth*, 807 F.2d at 734; *Behler*, 14 F.3d at 1270 (adopting *Lueth* where the indictment enumerates conspirators, rather than drugs, in the conjunctive).

Even if the indictment raised duplicity concerns, the Spencers' convictions would stand. In *Griffin v. United States*, 502 U.S. 46 (1991), one count of the indictment charged Griffin with conspiring to (1) impair the efforts of the IRS to collect taxes, *and* (2) impair the efforts of the Drug Enforcement Administration to ascertain forfeitable assets. The jury returned a general verdict of guilty on the count. She appealed, arguing that the general verdict left in doubt whether the jury convicted her of conspiring to defraud the IRS (for which there was sufficient proof) or conspiring to defraud the DEA (for which, the prosecution conceded, there was not sufficient proof). The Supreme Court affirmed. The Court stated that "[w]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . ., the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Id.* at 56-57, *quoting Turner v. United States*, 396 U.S. 398, 420 (1970) (holding that, where an indictment charges knowingly purchasing, dispensing, and distributing heroin, the conviction would have to be sustained if there was sufficient evidence of distribution alone). *See generally United States v. Summers*, 137 F.3d 597, 602 (8th Cir. 1998) (affirming a conspiracy conviction despite the claim that the government proved multiple conspiracies while the indictment charged a single conspiracy, because the evidence "established the existence of a single, ongoing conspiracy . . . ."). Here, as discussed below, the evidence viewed most favorably to

-11-

the verdict sufficiently establishes a single conspiracy between Antwoyn, Derrick, and others.

## 2. Statute of limitations

According to Antwoyn and Derrick, the government failed to prove an act in furtherance of their conspiracy, with a date attached to it, in the five years before their indictment on May 21, 2007.[3] This court reviews the sufficiency of the evidence supporting a conviction *de novo*, viewing the evidence most favorably to the verdict, resolving conflicts in favor of the verdict, and giving it the benefit of all reasonable inferences. *See United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002). "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Moore*, 108 F.3d 878, 881 (8th Cir. 1997).

The brothers contend that the government had the burden to prove that they conspired *with each other* within the limitations period. This is incorrect as stated

---

[3] The government contends that Antwoyn and Derrick waived the statute-of-limitations defense by not raising it before or at least during trial. *See United States v. Siegelman*, 561 F.3d 1215, 1232 (11th Cir. 2009) ("Requiring the defendant to assert a limitations defense at trial gives the prosecution a fair opportunity to rebut the defense through additional evidence or during summation."). Antwoyn and Derrick respond that, when a limitations defect is not in the indictment but in the proof, the defense can be asserted for the first time in a motion for acquittal either before or after the trial. *See Grunewald v. United States*, 353 U.S. 391, 396 (1957) ("It was therefore incumbent on the Government to prove that the conspiracy . . . was still in existence . . . and that at least one overt act in furtherance of the conspiracy was performed" within the limitations period). They maintain that here the statute-of-limitations issue was evident only from a close parsing of the trial transcript. This court need not here address the waiver issue, as the government provided sufficient evidence that Antwoyn and Derrick committed conspiratorial acts within the limitations period.

above.  *See **Behler***, 14 F.3d at 1269-70.  To meet its burden, the government needed to show only that each defendant conspired with others within the limitations period.

The government provided ample evidence that both Antwoyn and Derrick committed conspiratorial acts within the limitations period.  Testimony indicated that during 2006 alone, Antwoyn received 24 kilograms of cocaine from Nguyen.  Vontrell Williams testified that he purchased cocaine from Antwoyn following his release from prison in 2005.  Jermaine Richardson testified that in the two years before his 2006 arrest, he received large amounts of cocaine from Antwoyn.  Richardson also testified that he rode around selling cocaine and crack cocaine with Derrick during this period.  Derrick's two convictions for selling cocaine to Gentle in April and May 2006 corroborate Richardson's testimony that Derrick was dealing drugs within the limitations period.

The Spencers argue that Richardson did not testify that he rode around selling cocaine and crack cocaine with Derrick in 2005-2006.  The Spencers focus on the prosecutor's use of "ever" in questioning Richardson:

> Q.  Did you *ever* ride around and do that same thing with Derrick?
>
> A.  I did.

(emphasis added).  But, in context, the prosecutor had already narrowed the scope of the questioning to 2005-2006.  Three questions earlier, the prosecutor asked, "And the last two years, that's when you were getting those big amounts from Antwoyn Spencer?"  Critically, the prosecutor prefaced this question with the restrictive clause "And the last two years," referring to the last two years before Richardson's 2006 arrest.  Thus, a reasonable jury could conclude that the ensuing questions – "And were you out on the streets selling those amounts?"; "Well, breaking it down and selling it in smaller amounts?"; and "And did you ever ride around and do the same thing with Derrick?" – asked about the two-year period already identified.  Interpretation of

testimony is for the jury. *See, e.g., **Alholm v. Am. S.S. Co.***, 144 F.3d 1172, 1179 (8th Cir. 1998) (where Alholm's testimony could be interpreted in multiple ways, "[t]he evidence at trial could support either type of finding, depending on the interpretation of testimony, and such factual questions are for the jury to determine.").

The district judge who heard Richardson's testimony understood the exchange this way. Denying the Spencers' motion for acquittal, the court found, "Richardson testified that he sold drugs with Derrick Spencer in the two years prior to his arrest in June 2006."

Antwoyn and Derrick assert that evidence that they separately sold cocaine to third parties is not enough to establish a conspiracy. *See **United States v. Prieskorn***, 658 F.2d 631, 633 (8th Cir. 1981) ("Appellant correctly argues that the relationship between buyer and seller does not establish a conspiracy.")

*Prieskorn* does not help the Spencers. It recognized that evidence does not sufficiently establish conspiracy in buyer-seller situations where there is "only evidence of a 'single transient sales agreement' and small amounts of drugs consistent with personal use." *Id.* at 634. In this case, the evidence indicates multiple transactions of large amounts of drugs, and an ongoing relationship between Antwoyn, Derrick, and other co-conspirators. The evidence here sufficiently establishes conspiracy.

Even if, as the Spencers maintain, the government had to prove they conspired with each other within the limitations period, Jermaine Richardson testified that when he was selling drugs with Derrick in 2005-06, Derrick got his drugs from Antwoyn. In addition, officers executing a search warrant at the Spencers' mother's home in 2007 found drug scales and packing materials, as well as documents and other items tying Antwoyn and Derrick to the home. The evidence here is sufficient to establish conspiracy between Antwoyn and Derrick within the statute of limitations.

-14-

B.  Antwoyn's attempted possession with intent to distribute cocaine

Antwoyn contends that the evidence is insufficient to support his attempted possession conviction.  This court reviews the sufficiency of the evidence supporting a conviction *de novo*, viewing the evidence most favorably to the jury verdict, resolving conflicts in favor of the verdict, and giving it the benefit of all reasonable inferences.  *Cruz*, 285 F.3d at 697.

According to Antwoyn, the government failed to prove that he took a substantial step towards acquiring the eight kilograms of cocaine seized from Nguyen. Antwoyn maintains that the government relied on the unanswered telephone call to Nguyen's phone after his arrest as the "substantial step."  This act, Antwoyn contends, is too ambiguous to be a substantial step.  *See United States v. Davis*, 8 F.3d 923, 927 (8th Cir. 1993) ("Conduct is not considered a substantial step unless it is strongly corroborative of the criminal intent of the accused."); *Fryer v. Nix*, 775 F.2d 979, 994 (8th Cir. 1985) (the act cannot be ambiguous, but must be "unequivocal").

Antwoyn relies on *United States v. Joyce*, 693 F.2d 838 (8th Cir. 1982), overturning a conviction for attempting to possess cocaine with intent to distribute. Joyce flew from Oklahoma City to St. Louis to purchase cocaine, arrived at the arranged hotel room with $22,000 cash, and momentarily handled the package of cocaine.  But negotiations broke down in the hotel room; Joyce left with no intent of returning to make a purchase.  This court held that a reasonable jury could not find a substantial step, because "the [attempter's] act must have passed the preparation stage so that if it is not interrupted extraneously, it will result in a crime," and "Joyce, despite having both the opportunity and ability to purchase the cocaine at the agreed upon price, unambiguously refused . . . ."  693 F.2d at 841-42.

*Joyce* and subsequent decisions "turned on whether it was the defendant himself -- rather than a third party -- who ended the chain of events leading toward, but not resulting in, the commission of a substantive crime." ***United States v. Burks***, 135 F.3d 582, 584 (8th Cir. 1998), *citing* ***United States v. Jonsson***, 15 F.3d 759, 762 (8th Cir. 1994); *see also* ***United States v. Mims***, 812 F.2d 1068, 1078 (8th Cir. 1987). In *Burks*, officers executed a search warrant of the defendant's house minutes after postal inspectors delivered a box of cocaine. Burks had not opened the package, but had cut one side of the box. "Officers found a utility knife beside the package, and elsewhere in the master bedroom found a plate, a razor blade, and a small plastic baggie with some residue." ***Burks***, 135 F.3d at 583. They also found "seven hundred dollars in cash and three Western Union Money Order receipts" from Burks to a man in San Diego, the source of the package. ***Id.*** Burks was convicted for attempted possession with intent to distribute cocaine. This court affirmed, holding that "[t]his case differs from *Joyce* because here it was the intervention by government agents that ended the chain of events." ***Id.*** at 584. "Furthermore, the jury was presented with other circumstantial evidence that supports the conclusion that Burks's actions constituted a substantial step toward actual possession of the cocaine. 'A reasonable fact-finder may find guilt beyond a reasonable doubt based solely on circumstantial evidence.'" ***Id.***, *quoting* ***United States v. Garrett***, 948 F.2d 474, 476 (8th Cir. 1991).

Here, as in *Burks*, the government, not the defendant, ended the chain of events. As in *Burks*, the government presented circumstantial evidence that Antwoyn ordered and intended to possess the eight kilograms of cocaine. Nguyen testified that he was delivering the eight kilograms to Antwoyn, and that he had already delivered 24 kilograms of cocaine to Antwoyn in 2006 before his Wichita arrest. Co-conspirators testified that Antwoyn's source of supply in the summer of 2006 was an Asian male from Texas. A kilogram of cocaine seized from Jermaine Richardson, which Richardson testified he got from Antwoyn, was packaged in the same distinctive manner as the eight kilograms seized from Nguyen. Telephone records show Antwoyn and Nguyen were in frequent telephone contact during the summer of 2006. The jury could reasonably infer from this evidence, along with the missed phone call

-16-

to Nguyen's phone, that Antwoyn ordered and intended to possess the eight kilograms of cocaine.

## C. Derrick's distribution of cocaine

Derrick was convicted on two counts of distributing cocaine, both based on controlled sales to Gentle. Derrick argues that the district court violated his rights under the Sixth Amendment's Confrontation Clause by allowing evidence of these controlled buys despite Gentle's unavailability. This court reviews *de novo* the district court's determination of the protections afforded by the Confrontation Clause, and reviews the underlying factual determinations for clear error. *See **United States v. Bordeaux***, 400 F.3d 548, 552 (8th Cir. 2005).

The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." ***Crawford v. Washington***, 541 U.S. 36, 53-54 (2004). Gentle was a fugitive at the time of Derrick's trial. The government proved the two transactions by two types of evidence: the tape-recorded conversations between Derrick and Gentle, and the observations of surveillance officers.

The tape recordings do not implicate *Crawford*. Derrick's statements on the tape are "admissions by a party-opponent" and are admissible on that basis. *See **United States v. Tolliver***, 454 F.3d 660, 665 (7th Cir. 2006). Gentle's statements on the tape are admissible because they are nontestimonial. They put Derrick's statements "into context, making the admissions intelligible for the jury." ***Id.*** at 666. "Statements providing context for other admissible statements are not hearsay because they are not offered for their truth. As a result, the admission of such context evidence does not offend the Confrontation Clause because the declarant is not a witness against the accused." ***Id.*** (citations omitted).

As for the observations of the surveillance officers, the officers were live witnesses, subject to cross-examination. Derrick does not explain how their testimony implicates *Crawford*.

## D. Antwoyn's money laundering

Antwoyn objects to his money-laundering conviction on two grounds: (1) there is insufficient evidence that the money used to purchase his home in 2005 was "proceeds" of his unlawful drug trafficking, and (2) there is insufficient evidence that he "intended to conceal" the source of the money. This court reviews the sufficiency of the evidence supporting a conviction *de novo*, viewing the evidence most favorably to the jury verdict, resolving conflicts in favor of the verdict, and giving it the benefit of all reasonable inferences. *Cruz*, 285 F.3d at 697.

### 1. Proceeds

IRS Special Agent Daniel Nye testified that his analysis excluded any legitimate funds as sources of the money for the home purchase. This evidence, admitted without objection, is sufficient. *See **United States v. Pizano***, 421 F.3d 707, 723 (8th Cir. 2005) (holding that circumstantial evidence of a defendant's lack of legitimate income sufficiently establishes that funds defendant used to purchase real property are drug proceeds).

Antwoyn contends that he is entitled to a new trial under the Supreme Court's intervening decision in *United States v. Santos*, ___ U.S. ___, 128 S. Ct. 2020 (2008). *Santos* holds that, in the context of a gambling organization, the word "proceeds" in the money-laundering statute refers to profit, not gross revenue.[4] Antwoyn reasons

___

[4]Because *Santos* was a plurality opinion, its precedent is the narrowest holding that garnered five votes. *See **SOB, Inc. v. County of Benton***, 317 F.3d 856, 862 n. 1 (8th Cir. 2003), *citing **Marks v. United States***, 430 U.S. 188 (1977). Justice

that, because the jury instructions in his trial do not distinguish between "profits" and "receipts," his conviction is impermissibly based on receipts rather than profits.

Other circuits hold – and this court agrees – that *Santos* does not apply in the drug context. *See* **United States v. Howard**, 309 Fed. Appx. 760, 771 (4th Cir. 2009) (unpublished) ("*Santos* does not establish a binding precedent that the term 'proceeds' means 'profits,' except regarding an illegal gambling charge . . ."); **United States v. Fleming**, 287 Fed. Appx. 150, 155 (3d Cir. 2008) (unpublished) (holding that "the term 'proceeds' includes gross revenues for drug sales."). *See also* **Santos**, ___ U.S. at ___, 128 S. Ct. at 2035 & n.1 (Alito, J., dissenting) ("five Justices agree with the position" that "the term 'proceeds' 'include[s] gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales.'"). Even if *Santos* applies in drug cases, the district court here found, "Antwoyn Spencer's home purchase was a personal expense paid with the profits of his illegal activity, rather than the type of business expense described in *Santos*."

## 2. Intent to conceal

Antwoyn asserts that the evidence cannot establish intent to conceal when assets are purchased in his own name, relying on *United States v. Rockelman*, 49 F.3d 418 (8th Cir. 1995). But the money-laundering statute does not require proof of intent to conceal the launderer's identity; it requires proof of intent to conceal the illegal nature or source of the funds. *See* **United States v. Norman**, 143 F.3d 375, 377-78

Stevens's concurrence provides the narrowest holding: "The revenue generated by a gambling business that is used to pay the essential expenses of operating that business is not 'proceeds' within the meaning of the money laundering statute." ___ U.S. at ___, 128 S. Ct. at 2033. Justice Stevens acknowledges, "[a]s Justice Alito rightly argues, the legislative history of [18 U.S.C.] § 1956 makes it clear that Congress intended the term 'proceeds' to include gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales." ___ U.S. at ___, 128 S. Ct. at 2032.

(8th Cir. 1998); *United States v. Rounsavall*, 115 F.3d 561, 565-66 (8th Cir. 1997); *United States v. Nattier*, 127 F.3d 655, 659-60 (8th Cir. 1997). This court reversed Rockelman's money-laundering conviction because, in addition to not concealing his identity, he purchased the property entirely with cash and did nothing to hide the fact that he was paying for his property in cash. *Rockelman*, 49 F.3d at 422.

Unlike Rockelman, Antwoyn converted cash into checks from third parties, paying for the home with a cashier's check. Antwoyn did not pay for the home in cash. The jury could reasonably conclude that Antwoyn structured the transactions this way in order to conceal the source of his money.

### E. Counsel for Frederick Spencer's opening statement

Antwoyn and Derrick argue that they are entitled to a new trial because Frederick Spencer's counsel told the jury, in his opening statement, "You will hear directly from Fred Spencer. He has always been cooperative. He's not going to hide behind the Fifth Amendment."

If Antwoyn or Derrick had been denied a mistrial, the standard of review would be whether the district court abused its discretion in denying their motion for a new trial. *See United States v. Metz*, 625 F.2d 775, 778 (8th Cir. 1980). But here, neither defendant requested a mistrial. Rather, all parties agreed that the court should give a curative instruction, which it did. This court's "standard of review when no motion for a mistrial was made at trial is only for plain error." *United States v. Waldman*, 310 F.3d 1074, 1078 (8th Cir. 2002) (applying plain error review where an expert witness testified to the defendant's intent, the court sustained defense counsel's objection and gave curative instructions, and defense counsel did not move for mistrial). This court reverses for plain error "only if the error prejudices the substantial rights of a party and would result in a miscarriage of justice if left uncorrected." *Id.*, *quoting United States v. McNeil*, 184 F.3d 770, 777 (8th Cir. 1999).

-20-

The Fifth Amendment forbids any direct comment by the prosecution or defense counsel on a defendant's failure to testify. *See Griffin v. California*, 380 U.S. 609, 613-15 (1965); *Robinson v. Crist*, 278 F.3d 862, 866 (8th Cir. 2002); *DeLuna v. United States*, 308 F.2d 140, 154-55 (5th Cir. 1962). "[I]ndirect comments constitute a constitutional violation if they manifest [an] intent to call attention to a defendant's failure to testify or would be naturally and necessarily taken by a jury as a comment on the defendant's failure to testify." *Robinson*, 278 F.3d at 866, *quoting Graham v. Dormire*, 212 F.3d 437, 439 (8th Cir. 2000). A direct or especially blatant indirect comment cannot be cured by the standard privilege instruction. *Robinson*, 278 F.3d at 866. But "where the argument in favor of finding a constitutional violation is tenuous at best, the [privilege] instruction is an additional safeguard." *Id.*

Antwoyn and Derrick argue that Frederick's counsel's comment was sufficiently direct that it was not cured by the district court's privilege instruction, analogizing it to the comments warranting reversal in *De Luna*. In *De Luna*, one codefendant, Gomez, testified; the other, de Luna, did not. Counsel for Gomez argued, "Well, at least one man was honest enough and had courage enough to take the stand and subject himself to cross examination and tell you the whole story . . . You haven't heard a word from this man [de Luna]." *De Luna*, 308 F.2d at 143. The Fifth Circuit held this direct comment on de Luna's failure to testify violated his Fifth Amendment rights. *Id.* at 154-55.

The comment at issue here is more analogous to the comment in *Metz.* 625 F.2d at 777. Metz, Cuezze, and Spero were tried together for conspiring to possess, and possessing, a prohibited destructive device. Metz did not testify. In opening statements, Spero's counsel said: "In spite of that right [to refuse to testify], Joe Spero and Mike Cuezze will testify, and they will explain their version of things . . . ." *Id.* Metz, relying on *De Luna*, argued that this language emphasized to the jury his decision not to testify, and that the trial court's instructions did not cure the prejudice. On appeal, this court reasoned:

-21-

[A]n examination of the statements made by Spero's counsel reveals no direct reference to Metz's decision not to testify. Instead, the remarks were limited to the decision made by Metz's codefendants to take the stand and subject themselves to cross-examination. Under the circumstances, any prejudice which Metz might have suffered is the product of inference, alone, and can in no way be compared to the direct statements of the codefendant's counsel in *De Luna*.

*Id.* at 778. This court held: "Contrary to the situation in *de Luna*, we believe that the court's instructions to the jury in the present appeal were sufficient to remove any prejudice to Mr. Metz which might have been inferred by the jury from the comments of Spero's counsel." *Id.*

Like Spero's counsel in *Metz*, Frederick's counsel never affirmatively stated that Antwoyn and Derrick would not testify. He emphasized that Frederick *would* testify. A reasonable juror would not naturally and necessarily interpret this as commenting on Antwoyn's or Derrick's failure to testify. Any prejudice to Antwoyn or Derrick is the product of inference alone. As the district court noted in denying the Spencers' motion for acquittal, "any inference as to Antwoyn or Derrick Spencer's failure to testify is made all the more tenuous by the fact that, at the time the comment was made, it was not certain that [they] would invoke their Fifth Amendment rights during the trial." In this case, the district court's instruction was sufficient.

## F. Drug-quantity determinations

Antwoyn and Derrick contest the district court's drug-quantity determinations, which are factual findings reviewed under the clearly erroneous standard. *See* **United States v. Casas**, 999 F.2d 1225, 1230 (8th Cir. 1993). In this context, a district court's credibility determinations are "virtually unreviewable on appeal." **Id.** (citations omitted).

Antwoyn and Derrick claim that the evidence of the drug quantities involved in their conspiracy is so speculative that it cannot serve as the basis for calculating drug quantities, as a matter of law. *See United States v. Simmons*, 964 F.2d 763, 775-76 (8th Cir. 1992) (holding that a witness's interview and testimony "lack[ed] sufficient indicia of reliability to serve as a basis for calculating the quantity of cocaine base . . . ."). Specifically, Antwoyn and Derrick assert that if Richardson and Williams testified accurately about the drug quantities they purchased, Richardson would have netted over $6 million in profit, and Williams would have netted over $600,000. The government disputes the Spencers' calculations.

The district court presided at trial, observed the demeanor of the witnesses, and reviewed the trial transcript before sentencing. In its written statement of reasons for imposing sentences for both Antwoyn and Derrick, the district court noted that it overruled their challenges to the drug-quantity calculations. In each, the district court wrote that the drug-quantity calculations "were based on the testimony of trial witnesses." "After viewing that testimony at trial and reviewing the trial transcript in preparation for sentencing . . . the Court concluded that the quantities suggested by these witnesses were proved by a preponderance of the evidence."

The district court's careful determinations were not clearly erroneous.

III.

The judgment of the district court is affirmed.

BEAM, Circuit Judge, concurring and dissenting.

I concur in the court's opinion except for Part II.B. which concerns Antwoyn Spencer's alleged attempt to possess the cocaine seized from John Nguyen in Wichita, Kansas. From this holding, I dissent. There was simply insufficient evidence to support the conviction.

-23-

Proof of an attempt to possess drugs requires that (1) the defendant intended to possess the drugs, and (2) he took a substantial step towards possession of the drugs. United States v. Joyce, 693 F.2d 838, 841 (8th Cir. 1982). This step must "strongly corroborate[]" his criminal intent. Id. The court attempts to distinguish Joyce, but the case remains good law in this circuit and is applicable to this purported offense. In Joyce, the conviction was overturned for lack of a substantial step even though the government's informant described numerous phone conversations with Joyce to set up the deal, Joyce flew from Oklahoma City to St. Louis to purchase the drugs, and Joyce went to a hotel room where the deal was to take place. Id. at 839-40. Joyce carried $22,000 in cash and physically handled the package containing the cocaine but negotiations broke down in the hotel room when the undercover police officer refused to open the package. Id. at 840. Joyce left without making a purchase and was arrested. Id.

There really is no evidence regarding specific steps Antwoyn took toward the possession of this particular eight kilograms of cocaine seized from Nguyen on August 15, 2006. The *only* evidence, minimal at best, of a substantial step towards completion of the offense is the unanswered phone call Nguyen received from Antwoyn's phone following Nguyen's arrest. The government, and apparently the court, relies heavily on inferences raised from evidence of the "normal" course of business between Nguyen and Antwoyn to support Antwoyn's attempt charge. That evidence might support a conspiracy conviction but falls well short of proof of attempt.

> The key lies in the difference between the law of attempt and the law of conspiracy. Under the law of attempt, a substantial step is required in order for the defendant to be convicted. In contrast, conspiracy . . . does not require an overt act.

United States v. Robinson, 217 F.3d 560, 564-65 n.3 (8th Cir. 2000).

Each case the court cites in support of its affirmance is distinguishable. United States v. Burks, 135 F.3d 582 (8th Cir. 1998), for example, supports the proposition that but for the intervention of law enforcement, Nguyen would have completed his delivery of the cocaine to Antwoyn and that such behavior was sufficient to support a "substantial step." Id. at 584. But the Joyce problem is still there. No substantial step was taken by *Antwoyn*. In Burks, the case revolved around Burks' attempted possession and it was *Burks* that law enforcement cut short mid-stream. Id. Likewise, United States v. Garrett is inapposite. 948 F.2d 474, 477 (8th Cir. 1991). In Garrett the defendant *completed* telephone calls to a drug courier in an attempt to obtain cocaine from the courier, not knowing that police had already arrested the courier and seized the drugs. Id. at 476-77. Again, the instant case is totally different, as there was *no* confirmed contact from Antwoyn in this case regarding this shipment.

The inferences to be gleaned from the facts in this case fall well short of establishing a substantial step toward possession of the particular eight kilograms possessed by Nguyen at the time of his arrest. The inferences from the surrounding facts that Antwoyn often dealt with an Asian male from Texas, dealt in multi-kilo levels of cocaine, that the packaging of the cocaine Nguyen possessed matched other batches co-conspirators claimed they received from Antwoyn do little if anything to prove that on August 15, Antwoyn attempted to possess that particular eight kilograms.

Accordingly, I would reverse the attempt conviction and remand the case to the district court for resentencing of Antwoyn Spencer without consideration of that crime.

_____